(No. 41882.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
LENDELL D. GERSBACHER, Appellant.

*Opinion filed January 28, 1970.*

DEMETRI HASSAKIS, of Mt. Vernon, and R. G. HECKEN-
KAMP, of Springfield, for appellant.

FRANK H. WALKER, State's Attorney, of Mt. Vernon,
for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the
court:

At the conclusion of a jury trial in the circuit court of
Jefferson County, defendant-appellant, Lendell D. Gers-
bacher, was found guilty of the crimes of attempt to com-

mit murder, rape, and aggravated battery. Defendant was given concurrent sentences of from seven to fourteen years on the attempted murder and rape convictions. On appeal, the Appellate Court, Fifth District, affirmed the attempt and rape convictions but reversed the conviction for aggravated battery. (102 Ill. App. 2d 165.) We granted leave to appeal.

The prosecutrix testified that at approximately midnight on December 4, 1966, a man, whom she identified as defendant, came to the laundromat in Mount Vernon where she was washing clothes. He lured her to a parking lot on the pretext that her car had a flat tire and that he would assist her in changing it. Then, at gun point, he forced her into an automobile. She was driven to a house in town, forcibly raped three times and subjected to two unnatural acts. Afterward, her assailant drove her to another place on the outskirts of town, attempted to strangle her and then shot her three times in the head and left her lying in a ditch. She was discovered at about 2:00 A.M., and shortly thereafter the Mount Vernon police put out a radio call for the apprehension of a man of defendant's general description, allegedly driving a car similar in type and color to that owned by him.

Defendant's parents testified that he left their house at approximately 6:45 P.M. on December 4, and that they next heard from him by telephone at about 2:15 A.M. In response to the phone call, his father went to defendant's house and found him slumped in a chair, bleeding from the wrists. Defendant's mother arrived shortly thereafter, and a doctor was called. However, before the doctor arrived, defendant left the house and drove away in his automobile. A State trooper stopped him for a reason unrelated to the alleged offense, and later, upon learning of the crime and the description given by prosecutrix, reported the incident to the Mount Vernon police, and furnished them with defendant's license number.

Upon investigation, the Mount Vernon police found de-

fendant at his home. However, due to his weakened physical condition occasioned by loss of blood, he had to be hospitalized. While in the hospital, the police had three photographs taken of him. These were taken to the hospital where the prosecutrix was being treated. Within twenty-four hours after undergoing brain surgery to remove bullets imbedded in her skull, the prosecutrix identified the defendant from the photographs as her assailant. There was testimony that defendant owned a .32 caliber pistol and an opinion was expressed that the bullets removed from the prosecutrix were of that caliber.

Defendant's testimony consisted of a denial of the charges. A number of witnesses testified that defendant's reputation was good and there was some evidence that the prosecutrix's moral reputation was poor.

In this court, defendant raises four grounds for reversal: (1) that the identification of defendant by the prosecutrix at trial was based upon an improper pretrial identification and therefore should have been excluded; (2) that the prosecutrix "should have been given a psychiatric examination to determine if, in fact, she had been raped and to determine her general mental competency"; (3) that several of the instructions given to the jury were either erroneous or incomplete; and (4) that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt.

Relying on *United States* v. *Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert* v. *California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; and *Simmons* v. *United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, defendant contends that his pretrial identification was, under the circumstances, so unnecessarily suggestive and conducive to misidentification as to deny him due process of law. Although the pretrial identification was unorthodox and the procedure followed admits the danger of suggestion, under the totality of the circumstances surrounding it,

we find no error. In *People* v. *Blumenshine*, 42 Ill.2d 508, at 512, we stated that "not every viewing of a suspect or suspects alone will be considered a denial of due process, for there may be justifying or saving circumstances. See, *e.g.*, identifications upheld in: (1) *Stovall* v. *Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, where the viewing in a hospital was 'imperative', it being uncertain that the wounded victim would survive; (2) *People* v. *Speck*, 41 Ill.2d 177, 193, where a principal factor was that it was apparent that the identifying witness had an excellent opportunity to observe the defendant at the time of the crimes; (3) *People* v. *Robinson, ante,* at 371, where the person identified was known to the witness prior to the crime; (4) *People* v. *Bey, ante,* at 139, where uncommon distinguishing characteristics were the principal means of identification." But for the exigent situation confronting the police, the pretrial identification procedure here employed could have been questioned. (*Cf. Simmons* v. *United States*, 390 U.S. 377, 19 L. Ed. 2d 1247.) Both the prosecutrix and the defendant were hospitalized. The prosecutrix was in extremely critical condition and there was much doubt regarding her survival. The police, acting in the only manner available to them, went to defendant's hospital room and took the photographs of him. These photographs were shown to the prosecutrix who immediately and conclusively identified them as being of her assailant. The identification procedure employed closely parallels that passed upon in *Stovall* v. *Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, where, as here, the totality of circumstances surrounding it made prompt identification imperative. We therefore hold that it cannot be said that defendant's rights were violated in this regard. Furthermore, the prosecutrix had an excellent opportunity to view her assailant. Twice, he came into the well-lighted laundromat and conversed with her prior to her abduction. Although during the course of the sexual assault and shooting the complainant was blindfolded, she stated that on several

occasions the covering on her eyes slipped sufficiently as to enable her to view her assailant. Having had an excellent opportunity to observe the perpetration of the criminal act, there are sufficient guarantees as to leave only the question of credibility for the jury. *Cf. United States* v. *Wade,* 388 U.S. 218, 241, 18 L. Ed. 2d 1149, 1165; *People* v. *Speck,* 41 Ill.2d 177, 193.

We consider next defendant's argument that the prosecutrix should have been given a "psychiatric examination to determine if in fact she had been raped and to determine her general competency". The authorities cited by defendant are not dispositive of this issue. Upon thorough review of the record, we hold that the trial court properly denied the examination requested. In *People* v. *Nash,* 36 Ill.2d 275 at 280, this court stated that: "It has always been permissible to show that a witness  *  *  *  has a bad reputation for truth and veracity. [Citations.] It would seem unnecessary to raise the issue of whether a witness is a psychopath, from which a jury could infer that he possesses the characteristic of untruthfulness, when direct evidence of a witness's reputation for truthfulness is admissible. The motivation of a psychopath to lie may be different from a normal person, [citation] but the fact that he does lie, be he psychopath or not, is sufficient for the jury."

It is next claimed that certain instructions given were either erroneous or incomplete. Of the objections raised, we find that only one merits our consideration. Among the given instructions was one which purported to define the offense of attempt to commit murder, as follows: "The Court instructs the jury that the elements in the offense of attempt to commit murder are: (a) An intent to commit that specific offense. (b) An act done with such intent constituting a substantial step toward commitment of that offense." No instruction was given to the jury with regard to the elements of that "specific offense", *viz.,* murder. Although it would have been preferable to instruct the jury

on the elements of the crime attempted, after reviewing the record before us, we find that the evidence presented to the jury regarding the attempted murder was such that no error was occasioned by the failure of the court to give an instruction in this regard.

Finally, defendant contends that he was not proved guilty beyond a reasonable doubt. In support of his position defendant argues that although an extensive scientific investigation was made, no evidence was discovered which would indicate his guilt. He also points to the fact that there was no medical evidence indicating that the prosecutrix was raped. We have examined the transcript of record in this case and find that the evidence was sufficient to sustain defendant's conviction. The fact that no scientific evidence was adduced was a factor properly brought before the jury for whatever probative value it might have. It neither confirmed nor disputed the accusation of guilt. Further, the fact that there was no medical evidence that the prosecutrix was raped does not detract from the State's case. After being discovered, the prosecutrix told the investigating officer that she had been raped. The examining physician made no examination in this regard because of the serious nature of the prosecutrix's other wounds. We find that her detailed statement of the occurrence that evening was not lessened by the absence of medical corroboration. (*Cf. People* v. *Ritchie,* 36 Ill.2d 392.) In our opinion there was sufficient evidence to sustain defendant's conviction and we therefore affirm the judgment of the Appellate Court for the Fifth District.

*Judgment affirmed.*