THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES DAVIS, Defendant-Appellant.

(No. 70-34; ▮▮▮▮▮▮▮

Second District—February 17, 1971.

Morton Zwick, of Defender Project, of Chicago, (Thomas Holum, of counsel,) for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Malcolm F. Smith, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

James Davis, the defendant, was indicted and in a jury trial found guilty of the crimes of burglary and battery. He was sentenced to a term of 4-10 years in the penitentiary.

It appears from the record that about midnight on April 6, 1969, one J. William Champayne was aroused by a noise at his garage door and back door. Champayne lives at the northeast corner of 55th and Prospect Streets in Clarendon, Illinois. He switched on the exterior flood lights and opened the inner door and at a distance of 2-3 feet saw a man whom he later identified as the defendant. The defendant mumbled something to him about looking for someone else and then left abruptly. He was not wearing a jacket although it was quite chilly and Champayne testified that he was dressed in a short sleeved checkered shirt without a head covering. Champayne saw the defendant at the squad car a few minutes later.

Within a few minutes one Richmond Davis (17) and Richard Wright (22) living about five houses north of the above intersection heard noises in the upstairs of the home. This was the home of James G. Davis, a co-

incidence in the similarity of names but no relation or even acquaintance with the defendant James Rayford Davis. Richard Wright and Richmond Davis went upstairs, flicked on the light switch and saw the defendant in the bathroom. Richard Davis then struggled with the defendant putting an arm lock on him, and the defendant punched him in the eye and bit Richard Wright on the arm which he had around the defendant's head. The defendant broke loose, ran down the stairs and was seen by Richmond Davis on the landing of the stairs and he then ran out the front door. Richmond Davis having called the police the defendant ran in front of the police car, almost being struck by it. Richard Wright testified that the defendant had blonde curly hair, blue eyes, blue work trousers, no jacket, light blue plaid or checked short sleeved shirt and a tattoo of a nude on his left forearm.

One of the two police officers in the squad car chased the defendant around the side of a residence where Sgt. Blackwell, the police officer, found him within a minute or seconds later after he had lost sight of him, lying against the side of the house, winded and out of breath. He was taken back to the car where Richmond Davis and Richard Wright identified him. A third officer transported him to the police station. All of the prosecution's witnesses testified as to the defendant's clothing including the short sleeved checked or plaid shirt—although it was a chilly night.

The defendant was identified by William Champayne, Richmond Davis, Richard Wright and three police officers. The only gap in the chain of events from the struggle in the bathroom in the Davis house until his apprehension was a minute or less when he hid against the house and was out of sight of the pursuing officer, Blackwell. It can thus be seen that the contention of the defendant that the verdict is against the manifest weight of the evidence is without merit.

Defendant took the stand in his own behalf and was the only defense witness. He testified that he had been in prison for four years in Alabama for a burglary and car theft. He stated that he had spent the afternoon in taverns and had gone to Clarendon Hills to visit a friend's sister's house on 56th Street. He further testified as to drinking and said that his appearance in the neighborhood was due to the fact he was taking a walk because of the liquor consumed. He stated that he did not recall seeing Champayne and did not recall any conversation with the police officer until they put him in the squad car. Upon the trial he rolled up his shirt and disclosed a tattoo of a partially nude woman on his forearm. The only discrepancy, if any, of the testimony is (1) a cap which was found in the bathroom which did not fit the defendant, and (2) the evidence of the defendant's intoxication.

The police officers all testified that the defendant was not intoxicated and that they were familiar with intoxicated people and the evidence of intoxication.

It can thus be seen that defendant's story is not substantiated nor did any witness testify in his behalf as to his presence at the alleged friend's sister's house in Clarendon Hills.

Before the occurrence witnesses, Richmond Davis and Richard Wright, took the stand, defense counsel in chambers and with the concurrence of defendant, moved defendant be granted leave to remain outside the court room during their entire testimony as he wanted identification tested without his presence, arguing this unusual request was justified by the Code of Criminal Procedure Sec. 115—4(h), which provides:

"Trial by the court and jury shall be conducted in the presence of the defendant unless he waives the right to be present."

The State's Attorney was willing to have the witness' recollection tested in the defendant's absence but said his physical presence in the court room was necessary at some point in the testimony as defendant had no right to frustrate identification, citing *Schmerber v. California*, 384 U.S. 757, 16 L.Ed.2d 908, and suggesting the motion might necessitate defendant's being photographed during the lunch hour. When the trial resumed in the afternoon, the Court granted defendant's motion and allowed him to remain in chambers where he could hear the testimony but could not be seen by the witnesses or the jury.

Both Richard Wright and Richmond Davis described the defendant absent from the court room and positively identified him from photographs as the man in the Davis household on the night in question.

■■ This case was ably tried by resourceful attorneys on both sides. Defense Counsel interjected a novel problem and objected to identification from photographs but without invoking the ground or rationale of *U.S. v. Wade, infra, viz.*, that in-court identification testimony was inadmissible because of an improper pre-trial confrontation necessitating proof it was based on other observation of the accused. Defendant's failure of proof of prejudicial circumstances is fatal to his claim and we believe the record indicates independent and substantially consistent identification of defendant by a number of witnesses.

We are not aware of any taint resulting automatically from the use of photographic identification in lieu of physical presence and its use had been upheld in far more suggestive circumstances. *People v. Gershbacher*, 44 Ill.2d 321, 255 N.E.2d 429; *People v. De Mario*, 112 Ill.App.2d 175, 251 N.E.2d 267; and *People v. Davis*, 16 Ill.App.2d 162, 252 N.E.2d 743.

■■ The witness Champayne saw the defendant at his house, saw him

a few minutes later in the squad car after his apprehension by the police officers and identified the defendant in the court room. In addition to the identification by the two occupants of the Davis home in the Davis home and by the squad car after his apprehension, they for the third time identified him in the police station. Defendant contends that under the rule of *People v. Blumenshine* (1969), 42 Ill.2d 508, 250 N.E.2d 152, that his identification by Richmond Davis and Richard Wright in the Clarendon Hills police station was an unlawful pre trial line-up, being "conducive to irreparable mistaken identification." In *Blumenshine*, which was a robbery of a laundromat on November 29th, 1965, the defendant was viewed alone by the victims on December 18th, 1965, two and one-half weeks later. "No other substantial evidence was presented by the State to connect the appellant with the offense." That is not the case here where we find three witnesses and three police officers who either identified the defendant at the scene of the crime or at the time of the almost immediate apprehension of the defendant. Identification by the two young men of the defendant in the police station was at best, further corroboration. There is no merit to defendant's contention and he fails to place himself within the doctrine of *Blumenshine. U.S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926; *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951; *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967.

■■ Nor can we be persuaded there would be any reversible error here in view of the well settled principle that a party cannot take advantage of a situation induced by his own motion or voluntary act. (*Gallagher v. People*, 211 Ill. 158, 71 N.E. 842, affg. 110 Ill.App. 250, writ of error dismissed 203 U.S. 600, 51 L.Ed. 334; *People v. Clements*, 316 Ill. 282, 147 N.E. 99.) We believe the situation is somewhat analogous to one where a prosecutor's otherwise questionable remarks have been provoked by the other side. (*People v. Hayes*, 23 Ill.2d 527, 179 N.E.2d 660.) If the State had not found some means of substitute identification in the defendant's absence, the defense could have argued there was no identification by the two occurrence witnesses.

Judgment affirmed.

ABRAHAMSON and T. MORAN, JJ., concur.