STATE OF NEBRASKA, APPELLEE, v. DANNY C. HATTEN,
APPELLANT.

188 N. W. 2d 846

Filed July 16, 1971. No. 37823.

Paul E. Watts, Michael N. Schirber, Samuel A. Boyer, Jr., and Steve Greenberg, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an appeal from a denial by the trial court of a motion under the Post Conviction Act to vacate and set aside a conviction of first degree murder committed in the course of a robbery. We affirm the judgment of the trial court. The petitioner was tried before a jury on July 12 to 19, 1965. A verdict of guilty was rendered and on July 30, 1965, the petitioner, pursuant to the verdict, was sentenced to life imprisonment. In this post conviction proceeding the trial court appointed

counsel and an evidentiary hearing was held.

The motion to vacate is founded upon the allegation of ineffective counsel because such counsel allegedly failed in complete disregard of petitioner's "notice and manifest desire to appeal his conviction and sentence" to perfect an appeal. The motion claims meritorious grounds for appeal, to wit: (a) Evidence used at the trial was obtained as the result of unreasonable searches and seizures in violation of constitutional prohibitions; and (b) the petitioner's constitutional rights against self-incrimination were violated. Mention in this opinion of the specifics of allegations underlying (a) and (b) will be made as required.

At the evidentiary hearing the county attorney to whom a confession had been given was called by the petitioner as a witness. The petitioner himself testified at this hearing and there was offered and received in evidence on behalf of the petitioner a partial transcript, prepared at the request of the petitioner's attorney, of the testimony at the trial before the jury. Chief defense counsel at the trial was called as a witness by the State.

In order to obtain a proper perspective of the issue with reference to the claim of ineffective counsel because of failure to appeal, it is necessary to summarize some of the facts surrounding the trial. The record discloses that the petitioner was taken into custody on the day the offense charged occurred and later that day made a written confession of the crime. Prior to the signing of the confession he signed a waiver in writing as follows:

"WAIVER

"I, Danny Charles Hatten, have been advised by Sheriff Hall of Otoe County, Nebraska, that I am under arrest as a result of the shooting of Ella Snyder of near Talmage, Nebraska, and that there will be charges filed against me in connection with that matter.

"Mr. Hall has advised me that I have a right to remain silent and not answer any questions nor give any information regarding this matter, and that it is my

right not to incriminate myself. He has, also, advised me that I may have legal advice in this matter. All these things Sheriff Hall advised me when I first saw him earlier to day and has again told me at this time.

"I understand my rights to have a lawyer and to remain silent, but I wish to waive them and to give a statement regarding the circumstances of the shooting and other matters.

"I am twenty-five years old and I completed the 11th grade in school and am presently taking a correspondence course to complete my highschool education. I have served six years in the United States Army and got an Honorable Discharge in 1963. I consider myself capable of understanding and considering my rights and I have done so in executing this waiver.

"Signed at Nebraska City, Nebraska, this 27 day of March, 1965, at 7:11 o'clock P.M.

"     Danny C. Hatten

"WITNESS:
"Betty Peterson Sharp     "

The confession stated, among other things, that the petitioner had been engaged in his current job as a salesman only a few weeks; he had financial problems; on March 26 he received an income tax refund and with a portion of this bought a .22 revolver; "I bought the gun to try to get some money"; on the afternoon of the 26th, he used the gun for target practice and reloaded the gun; and the next morning he started out to sell and the home of a customer where he had earlier been nicely treated and made sales "popped into" his mind. He went to the home. He gave the lady some samples of his wares. She made a purchase and went to get her glasses. When she returned he pulled the gun and forced her to write a check for $200. The victim then went to the other room. He followed her, gun in hand. She sat on the bed and he looked for something to tie her with. She threw a pillow at him. "I thought she

was jumping up and I just pulled the trigger. . . . She laid back on the bed. I knew she had been hit by the way she fell back." He left, taking the check, checkbook, and gift samples with him. He and his car were observed shortly after he left the place. He threw out the checkbook and later the gun. He went to a drugstore, cashed the check, and obtained some money orders. The confesson concluded: "I know this statement can be used as evidence against me and I gave it because I just wanted to get it off my chest."

Trial counsel did not enter the picture until sometime later, apparently on March 29.

The circumstances surrounding the waiver and the confession were thoroughly explored both at the evidentiary hearing and at the trial. This evidence discloses that the actual oral admonitions given petitioner concerning his rights to counsel and to remain silent were more extensive than indicated in the waiver. It discloses he was advised he would be charged with a crime, the nature of which would depend upon the outcome of shooting the victim; that he had the right to an attorney and to remain silent; that anything he said would be reduced to writing and used against him; that all of this took place before interrogation began; that no promise was given nor threats made; and that no coercion of any kind preceded or accompanied the interrogation and confession. The findings of the court as to voluntariness of the confession and that his right to counsel and against self-incrimination were intelligently and voluntarily waived under the constitutional standards prevailing prior to June 13, 1966, the date of the opinion in Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974, were fully justified. The standards laid down in that case do not apply to convictions prior to that date. Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882.

At the trial the voluntariness of the confession was attacked unsuccessfully.

The trial strategy of counsel was to save the petitioner from the electric chair by admitting the act, but attempting to show, save for the fact that the act was committed in the course of a felony, that the mental state of the petitioner was such that it did not characterize first degree murder and did not deserve the death penalty. This strategy was successful.

The evidence adduced at the evidentiary hearing was primarily directed to the issue of ineffective counsel because of failure to appeal. The evidence on the point clearly justified the trial court's denial of the motion.

Petitioner testified as follows. After trial he discussed the matter of appeal with both his attorneys. They asked him whether he wanted to appeal or not. He told them he wanted to discuss it with his wife and mother. Two days later he notified them he wanted to appeal. He testified that after his confinement in the penal complex he wrote one letter asking the status of his appeal. Counsel did not answer. He wrote a second letter and this time received a reply stating he had signed a waiver of his right to appeal. He did not have copies of his letters or replies. He did not recall signing any papers. He stated he talked to his attorney only twice about the appeal, once during trial and then on July 30, 1965. He stated he never saw him at all between July 19 and July 30, 1965. He acknowledged the signature on the written waiver of appeal as his but he does not know how it got there. The waiver was captioned in the case and is as follows:

"Comes now the defendant herein and on this 17th day of August, 1965, hereby waives his right of appeal in this matter.

"(Signed)   Danny C. Hatten

DANNY CHARLES HATTEN"

Counsel who represented the defendant at the jury trial was called by the State. He testified he had five conferences with the petitioner following the jury ver-

dict on July 19, 1965. Those were on July 20, 21, 27, 28, and 30, 1965. This is borne out by copy of the time records submitted in support of claim to the county for services. Counsel testified that at these conferences a new trial and matter of appeal were discussed. The petitioner decided against appeal because the possibility of the death penalty in the event of a second conviction "didn't appeal to the defendant at all." The jury had at one time voted seven to five for the death penalty. On July 27, 1965, the petitioner made his decision not to appeal. After petitioner's commitment to the penal complex, counsel visited him there and it was at this time that the waiver was signed on August 17, 1965. The correspondence with the petitioner was introduced. The first letter from the petitioner was dated August 16, 1966. It did not mention the appeal, but expressed a desire for a conference. This letter was answered on August 19, 1966. The next letter from the petitioner was dated March 25, 1967. It mentioned for the first time the matter of appeal and referred to matters he had found out since being in the penal complex. This letter was answered March 29, 1967.

A defendant may waive a constitutional right or guarantee provided it is done knowingly and voluntarily. State v. Ninneman, 179 Neb. 729, 140 N. W. 2d 5. The evidence clearly supports a knowing and voluntary waiver and the reason appears to have been a desire on the part of the petitioner to avoid the risk of a possible death penalty on retrial. At the time of this waiver the question of a greater punishment on retrial had not yet become a constitutional issue. It was then and apparently still may be a real hazard. North Carolina v. Pearce, 395 U. S. 711, 89 S. Ct. 2072, 23 L. Ed 2d 656; Moon v. Maryland, 398 U. S. 319, 90 S. Ct. 1730, 26 L. Ed. 2d 262. Not yet determined is the question whether a jury may impose a more severe sentence on retrial. Skipper v. Cox, 320 F. Supp. 934.

The petitioner contends that trial counsel should have

appealed and raised the issue of arrest without probable cause and then on retrial would have been in a position to move to suppress, because they were the fruits of an illegal arrest, the confession, and certain documentary evidence taken from the petitioner's car. No evidence was introduced by the petitioner to specifically support the proposition of arrest without probable cause. The testimony in the partial transcript from the trial and that presented at the evidentiary hearing, for reasons already mentioned, namely, the possession and cashing by the petitioner of the victim's check, the purchase of the gun, the presence of the petitioner near the scene shortly after the event, plus the apparent ability of the victim to make a statement before her death, leads to the conclusion that the arresting officers were in possession of information which gave probable cause. Otherwise the almost immediate apprehension of the petitioner cannot be explained. This clearly disposes of the question of illegality of the arrest. State v. Agnew, 184 Neb. 700, 171 N. W. 2d 542; State v. Harding, 184 Neb. 159, 165 N. W. 2d 723; State v. Perez, 182 Neb. 680, 157 N. W. 2d 162.

On question of the validity of search of the automobile in connection with lawful arrest, see State v. Putnam, 178 Neb. 445, 133 N. W. 2d 605, and cases collected at 19 A. L. R. 3d 727, 775. The burden of proof in this post conviction hearing was on petitioner. He did not at the evidentiary hearing explore the circumstances of the search of the auto. The only evidence he introduced on the point was his own statement that he did not consent to the search. If the search was made in appropriate connection with a valid arrest his lack of consent was immaterial. He was arrested at his home. He went there by automobile. It apparently was nearby. More than lack of consent would have to be shown to make the search invalid. All we have said assumes that there was no warrant for the search. The petitioner made no attempt to show that there was no warrant. There is

nothing in the record to indicate that the motions to suppress would probably have succeeded. Petitioner has not shown he was prejudiced. United States v. Maroney, 408 F. 2d 1186.

The petitioner claims his rights against self-incrimination were violated because, after giving his confession, he was taken to the hospital for identification by the victim who was then critically ill from her wounds and who in fact later died. The petitioner's constitutional rights in this connection were not violated. See Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199, where viewing in the hospital was held to be imperative because it was uncertain whether the victim would survive. That case also holds that United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, do not have retroactive application. See, also, People v. Gersbacher, 44 Ill. 2d 321, 255 N. E. 2d 429.

The burden of proof was on the petitioner to establish a basis for relief. State v. Rapp, 186 Neb. 785, 186 N. W. 2d 482. The petitioner in this case does not maintain he is innocent. His argument essentially is that if his trial counsel had foreseen future developments of the law and been able to persuade the courts to apply them in petitioner's case, then it would have been much more difficult to convict him or he might possibly have been acquitted. An attorney is not to be deemed ineffective to the point of impairment of constitutional rights of client by viewing his advice retrospectively. Henderson v. Cardwell, 426 F. 2d 150. In addition to waiving his right of appeal the petitioner has also not shown meritorious grounds for an appeal. State v. Myles, 187 Neb. 105, 187 N. W. 2d 584.

AFFIRMED.