STATE of Iowa, Appellee,

v.

LeRoy SEILER, Appellant.

No. 69019.

Supreme Court of Iowa.

Dec. 21, 1983.

Rehearing Denied Jan. 19, 1984.

Charles L. Harrington, Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan and James W. Ramey, Asst. Attys. Gen., and Ted Hovda, County Atty., for appellee.

REYNOLDSON, Chief Justice.

Appealing his conviction of first-degree murder, defendant LeRoy Seiler assigns two errors: (1) the issuance of a search warrant without probable cause and (2) error in the jury instructions defining the underlying felony of burglary for purposes of the felony-murder rule. We affirm the district court judgment.

March 6, 1982, the body of Wilmer Gilles was found on the floor of the billiard parlor and tavern that he owned and operated with his wife. His thumb had been severed by a sharp, heavy object and he had received numerous head injuries, two of which were massive cuts and delivered with enough force to penetrate his skull. The victim had bled profusely, and the crime scene disclosed a great quantity of blood. Expert testimony fixed the time of death at about 2:30 a.m.

Investigators discovered a set of bloody boot prints leading away from the tavern. Blood was also discovered in a public shower facility at the Victoria Hotel, located across the street from the tavern, and on a doorknob leading into an apartment building next to the hotel. Defendant was admitted to the apartment building by one of its residents about four o'clock in the morning on March 6. He had just taken a shower. He apparently gained access to the apartment of his friend, Bruce Bohle, because he was seen wearing Bohle's clothing around noon. Defendant's own clothes, covered with the victim's blood, later were found inside a television set in Bohle's apartment. They were discovered after defendant confided to a cell mate in the Hancock County jail that he had hidden in Gilles' tavern with an intent to steal the cash on hand and had been discovered by Gilles. Defendant further stated that in the ensuing struggle he hit the victim with a meat cleaver and later secreted the stolen money and defendant's bloody clothes inside Bohle's television set.

During the investigation on the date of the crime, an officer was sent to interview defendant at his parents' home. As he approached the residence, the officer noticed several boot prints similar to those found at the scene of the crime. Defendant was barefoot when the officer first saw him. Although it was cold and the ground was covered with snow, defendant put on tennis shoes to accompany the officer to the station. This was unusual, because defendant customarily wore hiking boots with big treads and patterned soles. During the further course of their investigation, police interviewed two of defendant's acquaintances, who agreed they had seen defendant wearing Bohle's clothing around noon on March 6.

The officers then obtained the contested search warrant, and successfully searched the Seiler home for defendant's hiking boots and Bohle's clothing. Defendant was arrested for stealing the latter. While in jail, he related the above details of the Gilles homicide to his cell mate. Defendant was charged with murder and tried before a Mitchell County jury, following a successful motion for a change of venue. Defendant did not take the stand or produce any evidence to rebut the prosecution's case.

At the close of the trial, the jury was instructed on the felony-murder doctrine. The instruction on the underlying felony of burglary stated only that a burglary could serve as the needed forcible felony if performed "by force or against the will of the other." Defendant was convicted of first-degree murder and sentenced to life imprisonment.

I. Defendant challenges the validity of the search warrant authorizing seizure of his hiking boots and Bohle's clothing. He contends the issuing magistrate was not provided sufficient facts to support a finding of probable cause.

■ Our review here is de novo, and we look to the totality of the circumstances surrounding the issuance of the warrant. *See State v. Farber,* 314 N.W.2d 365, 366 (Iowa 1982); *State v. Dickerson,* 313 N.W.2d 526, 530 (Iowa 1981). However, we consider only such information as was actually presented to the magistrate when the warrant was requested. *State v. Spier,* 173 N.W.2d 854, 858 (Iowa 1970).

Allan Woodley, an officer of the Garner police department, presented this warrant application. It stated the officer's belief that Gilles had been the victim of foul play and the reasons underlying that inescapable conclusion. It also stated that the officer had observed footprints with the same hiking boot pattern both at the crime scene and at the Seiler residence, and that the crime scene footprints contained traces of blood. Further, the officer stated defendant had worn tennis shoes, and not hiking boots, to accompany the officer to the station. Also attached to the application was the statement of William Basler, an agent of the Iowa Department of Criminal Investigation. Agent Basler recounted his interviews with Connie Bohle and Patrick Wycoff, both of whom stated that defendant had been wearing Bruce Bohle's clothing on March 6, and that defendant normally wore hiking boots with patterned soles. Agent Basler also stated his belief

that defendant's hiking boots could be found at the Seiler residence and that once found, they would match the crime scene footprints. Upon this showing, the magistrate issued the warrant, "because of *the facts presented*" (emphasis added) and the reliability of the officers.

■ It is axiomatic that search warrants are to issue only upon a finding of "probable cause." "Probable cause" for the issuance of a warrant exists only "when the facts and circumstances presented to the judicial officer are sufficient in themselves to justify the belief of a reasonably cautious person that an offense has been ... committed," *State v. Leto,* 305 N.W.2d 482, 485 (Iowa 1981); *State v. Boer,* 224 N.W.2d 217, 219 (Iowa 1974), or "that ... evidence is presently being ... concealed at the place to be searched." *State v. Post,* 286 N.W.2d 195, 199 (Iowa 1979). Nonetheless, "there is a large difference between" proof of guilt and proof of probable cause. *Brinegar v. United States,* 338 U.S. 160, 173, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879, 1889 (1949). Although it may be difficult to discern in a particular case whether an affidavit demonstrates the existence of probable cause "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); *Leto,* 305 N.W.2d at 485.

In this case a crime unquestionably had been committed, and the linkage between it and defendant was supplied by the first-hand observations of police officers and concerned citizens. Additionally, the magistrate was presented with facts sufficient to establish this linkage for himself. The affidavits disclosed that blood trails were found at the crime scene, matching sets of patterned footprints were found at the scene and at the Seiler home, and the defendant habitually wore boots that could have produced the footprints. Thus, there was sufficient factual support for agent

Basler's conclusion that the boots at the Seiler residence would match the prints at Gilles' tavern. The magistrate also was informed by affidavit that defendant wore tennis shoes to the police station on a snowy day in March. Because common sense dictates defendant ordinarily would select his hiking boots in such weather, the magistrate could reasonably infer, from defendant's failure to wear them, that there was a connection between the boots, the blood, and the crime. "The point of the Fourth Amendment, ... is not that it denies law enforcement *the support of the usual inferences which reasonable men draw ....*" *State v. Hamilton,* 236 N.W.2d 325, 327–28 (Iowa 1975) (quoting *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948) (emphasis in original)).

We conclude the warrant application provided sufficient facts to enable the magistrate to determine for himself there was probable cause to link defendant with the crime. Warrants are favored, *Leto,* 305 N.W.2d at 485; *State v. Wright,* 244 N.W.2d 319, 321 (Iowa 1976), and search warrant affidavits must be scrutinized in a commonsense and realistic fashion so that the police officers who draft them are not discouraged from seeking judicial approval for their acts. *Spier,* 173 N.W.2d at 858. After testing this application in light of "the factual and practical considerations of every day life on which reasonable and prudent [individuals] ... act," *id.* (quoting *Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1890), we find the district court committed no error in admitting the evidence seized under this warrant.

II. Defendant also alleges error in the instructions given to the jury regarding felony-murder. Trial court's instructions permitted the jury to find defendant guilty of first-degree murder under the alternate theories of murder committed in the course of either the crime of willful injury or the crime of first-degree burglary. A preliminary instruction stated:

One circumstance [where murder becomes first-degree murder] is the so-called "Felony-Murder Doctrine." That is where one kills another person with malice aforethought while participating in a forcible felony.

Iowa's statutory codification of the felony-murder rule does elevate to first-degree murder any murder committed while the defendant is participating in a forcible felony, *see* Iowa Code section 707.2(2) (1983). Iowa Code section 702.11 provides the list of forcible felonies, and it includes first (but not second) degree burglary. First and second degree burglaries are differentiated by the "presence or absence of an element of personal violence," 4 J. Yeager & R. Carlson, *Criminal Law and Procedure* § 291 (1979), as first-degree burglary is defined as burglary by a perpetrator who "has in his or her possession ... a dangerous weapon, or intentionally or recklessly inflicts physical injury." Iowa Code § 713.3 (1983).

In instructing the jury on burglary as a basis for application of the felony-murder rule, trial court said only that:

In considering First Degree Murder under the Felony-Murder Doctrine, you are instructed that the law provides that when [sic] a person commits a burglary when the burglary is performed *by force or against the will of the other.*

You are further instructed *that* burglary is a forcible felony.

(Emphasis added.) Defendant objected to this instruction on the ground "it states that burglary is a forcible felony, and I believe the law is that burglary in the first degree is a forcible felony. There are no instructions as to the elements of burglary." Trial judge responded by stating that in this case "there [was] sufficient evidence to show force." Upon appeal defendant urges only that under these instructions the jury could have found he killed the victim, with malice aforethought, in the perpetration of a burglary other than first-degree burglary.

We note at the threshold that although trial courts may use their own words in framing jury instructions, *State v. Millspaugh*, 257 N.W.2d 513, 515 (Iowa 1977), careful attention to the wording of the relevant statutes would minimize the chances of appeal and reversal. In this case the jury instruction broadened the potential for a felony-murder conviction by eliminating the physical injury requirement and allowing the jury to convict defendant on a finding he participated in a burglary that was perpetrated "against the will of the other." Thus, the instruction was erroneous.

 However, although defendant is entitled to a fair trial, he is not necessarily entitled to a perfect one, *State v. Freeman*, 297 N.W.2d 363, 367 (Iowa 1980). An error in instructing the jury does not necessitate reversal unless it is prejudicial. *State v. Gibb*, 303 N.W.2d 673, 686 (Iowa 1981). The facts presented at defendant's trial conclusively show a violent burglary had been committed. The question was whether defendant was the person who had committed it. The evidence of intentionally inflicted physical injury was overwhelming. Several witnesses testified without contradiction to the number and severity of Gilles' wounds.

Defendant's reliance on *State v. Cuevas*, 282 N.W.2d 74 (Iowa 1979), is misplaced. The *Cuevas* jury was instructed only on first-degree murder, although defendant's intent to kill was inferable only from his firing of a single, deadly bullet. This court ordered a retrial with instruction on lesser included offenses because "[w]hile unlikely, the jury could have found defendant shot [the victim] . . . without finding the shooting was intentional," *id.* at 78. While the firing of a single bullet does not inescapably lead to the conclusion that the perpetrator intended the victim's death, the presence of multiple lacerations and two massive, skull-penetrating, meat cleaver wounds does inescapably lead to the conclusion that the burglary of the victim's tav-ern involved the intentional infliction of violence. There was no evidence from which the jury could have concluded defendant committed only second-degree burglary.

In analogous situations, other jurisdictions have found no reversible error in faulty jury instructions. In *People v. Horton*, 107 Mich.App. 739, 310 N.W.2d 34 (1981), the trial court impermissibly broadened the class of sex-related crimes which the jury could consider as a basis for felony-murder by instructing on criminal sexual conduct instead of on rape. However, the court found the error nonprejudicial because none of the additional crimes were supported by the evidence. Similarly, in *State v. Hunter*, 290 N.C. 556, 227 S.E.2d 535 (1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977), trial court failed to instruct on the essential elements of the felony underlying a felony-murder charge. Again, no reversible error was found because "the occurrence of the attempted armed robbery . . . was not disputed." *Id.* at 580, 227 S.E.2d at 549–50. *See also Payne v. State*, 261 Ala. 397, 74 So.2d 630 (1954); *People v. Gersbacher*, 44 Ill.2d 321, 255 N.E.2d 429 (1970); *People v. Lindsay*, 67 Ill.App.3d 638, 384 N.E.2d 793, 23 Ill.Dec. 886 (1978).

 Because this jury could not have failed to find the intentional infliction of physical injury which would necessarily trigger a finding of first-degree burglary, the erroneous jury instruction did not constitute reversible error. We affirm the judgment of conviction entered by the district court.

AFFIRMED.

All Justices concur except McCORMICK, J., who dissents.

McCORMICK, Justice (dissenting).

I am unable to agree with division II and the result. The trial court's instructions authorized the jury to find the defendant

guilty of first-degree murder based on finding defendant committed murder in the perpetration of a burglary. The court did not define burglary or tell the jury only first-degree burglary would enhance the offense to first-degree murder, despite a timely defense objection pointing out the error.

This court's holding is the equivalent of a directed verdict for the State on an issue the State was obliged to prove beyond a reasonable doubt. I do not believe the evidence was sufficient to overcome the presumption of prejudice that arises from the erroneous instruction. I would reverse and remand for new trial.