# In the Iowa Supreme Court

No. 23–1600

Submitted November 13, 2024—Filed December 20, 2024

**Bryan C. Singer, Erika L. Nordyke, Beverly A. Van Dam, Joshua L. Dykstra, 3D Rentals, LLC,** and **DP Homes, LLC,**

Appellees,

vs.

**City of Orange City** and **Kurt Frederes,**

Appellants.

Appeal from the Iowa District Court for Sioux County, Jeffrey A. Neary, judge.

A city appeals from an order declaring an ordinance unconstitutional. **Reversed and Remanded.**

May, J., delivered the opinion of the court, in which all justices joined.

Zachary D. Clausen (argued) and Douglas L. Phillips of Klass Law Firm, L.L.P., Sioux City, for appellant.

John G. Wrench (argued) and Robert Peccola of Institute for Justice, Arlington, Virginia, and Alan R. Ostergren of The Kirkwood Institute, Des Moines, for appellee.

Xinge Hong of American Civil Liberties Union Foundation, New York, New York, and Rita Bettis Austen of ACLU of Iowa Foundation, Inc., Des Moines, for amicus curiae American Civil Liberties Union of Iowa.

**May, Justice.**

Orange City passed an ordinance that requires periodic inspections of rental properties. If a city inspector needs to enter a rental property to conduct an inspection, and "[i]f entry is refused," then the ordinance authorizes the inspector to seek "remedies provided by law to secure entry, including, but not limited to, obtaining an administrative search warrant to search the rental unit."

In this case, certain owners and renters of rental units assert a facial challenge against the ordinance. They claim that the ordinance's mandatory inspection regime violates article I, section 8 of the Iowa Constitution because it permits the City to seek warrants but does not expressly require the City to show "probable cause" in the traditional criminal-investigation sense, that is, reason to believe that a violation has occurred with respect to a particular rental unit.

We disagree. In a facial challenge, the challenger must show that no application of the ordinance could be constitutional under any set of facts. But we think that there are sets of facts where the ordinance could operate without violating article I, section 8. For instance, the ordinance expressly permits *private* inspectors to conduct the required inspections. When that occurs, the property is exempt from inspection by city officials. No government official will enter—nor seek an administrative warrant to enter—the rental home. In that set of facts, constitutional warrant requirements are not even implicated, much less offended.

The facial challenge cannot succeed. We reverse the district court's contrary ruling.

**I. Background.**

**A. The Ordinance.** Iowa Code chapter 364 addresses cities' powers and responsibilities. Iowa Code §§ 364.1–.25 (2021). Section 364.17 requires cities

with populations of fifteen thousand or more to adopt a housing code. *Id.* § 364.17(2). Section 364.17 also permits smaller cities to adopt a housing code. *Id.* § 364.17(6). Either way, if a city adopts a housing code, the city must "adopt enforcement procedures, which [must] include a program for regular rental inspections, rental inspections upon receipt of complaints, and certification of inspected rental housing." *Id.* § 364.17(3)(*a*).

In February 2021, Orange City adopted "Ordinance No. 825." The ordinance supplements the City's existing building code by adding provisions that govern rental housing units.

The new provisions require owners of rental units to obtain permits from the City. The provisions also create a program for regular inspections of rental properties. This program is described primarily in section 4.08 of the ordinance, which states in part:

> The Code Enforcement Department shall inspect all rental units being offered as a rental in the City of Orange City every five(5) years. As part of the revolving inspection process the Code Enforcement Department may require, that a re-inspection be held at a time sooner than five(5) years if concerns or violations were found during previous inspections or the Code Enforcement Department receives complaints of possible Building Code violations of a rental unit during the five (5) year term.
>
> Inspections of a rental unit shall be subject to the following terms and conditions:
>
> 1. The City shall notify the owner/landlord of its intent to inspect a rental unit at least 15-days prior to a scheduled inspection. It is the owner/landlord's responsibility to notify the tenants of the date/time of inspection prior to the inspection.
>
> 2. Inspections shall not be conducted without the property owner or owner's representative present unless owner or owner's representative gives their permission to the City to inspect without them being present prior to the inspection.
>
> 3. Inspections shall be consistent with the applicable building codes adopted by the City of Orange City.

The next section of the ordinance, section 4.09, is entitled "right of entry." Here is its text:

> If it is necessary for a code official to conduct an inspection in order to enforce the provisions of this code and, in doing so, requires access to the rental. The inspector may enter the rental at reasonable times to inspect or to perform duties imposed by this policy. If such rental is occupied the inspector shall present credentials to the occupant before entry. *If entry is refused the inspector shall have recourse to the remedies provided by law to secure entry, including, but not limited to, obtaining an administrative search warrant to search the rental unit.*

(Emphasis added.) It is important to note, however, that the ordinance also provides a way to opt out of its inspection-by-government-official program. In section 4.02(2), entitled "exempt rentals," the ordinance states:

> Rental units that are inspected by a certified third-party inspection organization will not require an inspection from the City of Orange City. The Code Enforcement Department of the City of Orange City will maintain a list of all rental units that are exempt from the inspection requirements of this ordinance.

**B. This Dispute.** Soon after the ordinance passed, Orange City sent letters to all owners of rental properties within the city. The letters announced the ordinance's passage. Enclosed with the letters were "Application[s] for Rental Permit[s]" that owners would need to fill out and submit to the City. The applications provided a phone number that owners could call to schedule rental inspections.

In April, protest letters were mailed to Orange City by certain owners of rental properties (owners) and by the renters of those properties (renters). The protesting owners were 3D Rentals, LLC, and DP Homes, LLC. The protesting renters were Amanda Wink, Bryan Singer, and Erika Nordyke.

The renters' letters asserted that they would "not voluntarily allow" inspections of their rental homes. As authority, the renters cited article I,

section 8 of the Iowa Constitution. The owners' letters expressed support for their renters' rights.

In May, Orange City sent responsive letters to the owners and renters. The letters were signed by Kurt Frederes, the Orange City Code Enforcement Officer. The letters explained:

> At this time Orange City intends to continue to follow the process of the Rental Ordinance including inspection of your property.[1] At the time of setting up the rental inspection for your property, Orange City will contact you to set up time for these inspections and expect to complete the inspections on the property. In the event that the inspections are refused, the City at that time will take the necessary steps to complete the process per the terms of the ordinance.

**C. This Lawsuit**. That same month, the owners and renters (collectively, "the citizens") commenced this lawsuit against Orange City and Frederes (collectively, "the City"). Their petition asked for a declaration that the ordinance's inspection requirements violated article I, section 8 of the Iowa Constitution, injunctive relief against the City, and nominal damages.

Following discovery, the parties filed cross-motions for summary judgment.[2] The district court denied the City's motion, granted the citizens' motion, and awarded nominal damages of one dollar to each citizen. The court "[d]eclare[d] unconstitutional the mandatory inspection requirement of Ordinance No. 825" and permanently enjoined the City "from seeking an administrative warrant to conduct inspections authorized under the current language set forth in the City's ordinance."

The City now appeals. Our review is de novo. *City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 339 (Iowa 2015).

---

[1]Where appropriate, the letters used the plural "properties."

[2]Prior to the filing of the citizens' motion for summary judgment, Amanda Wink voluntarily dismissed her claims. Wink is not a party to this appeal.

**II. Analysis.**

**A. The Citizens' Challenge.** We begin our analysis with some additional explanation of the citizens' challenge. As will be explained, their challenge is largely about the similarities—and potential differences—between the warrant requirements of the Fourth Amendment to the United States Constitution, on the one hand, and the warrant requirements of article I, section 8 of the Iowa Constitution, on the other.

As this court has recognized, the texts of those two provisions are essentially identical:

| Fourth Amendment to the United States Constitution | Article I, section 8 of the Iowa Constitution |
|---|---|
| The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. | The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized. |

We have also recognized that article I, section 8 "as originally understood, was meant to provide the same protections as the Fourth Amendment, as originally understood." *State v. Burns*, 988 N.W.2d 352, 360 (Iowa 2023) (quoting *State v. Wright*, 961 N.W.2d 396, 412 (Iowa 2021)). So it is not surprising that our interpretations of article I, section 8 have often "tracked with" federal courts' interpretations of the Fourth Amendment. *Id.* (quoting *Kain v. State*, 378 N.W.2d 900, 902 (Iowa 1985)).

But federal courts' interpretations of the Fourth Amendment do not *dictate* our interpretation of article I, section 8. *See State ex rel. Kuble v. Bisignano*,

28 N.W.2d 504, 508 (Iowa 1947). Rather, we are "the final arbiter" of article I, section 8's meaning. *Burns*, 988 N.W.2d at 360 (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940)). And we recognize "our duty to interpret article I, section 8 independently," *State v. Brown*, 930 N.W.2d 840, 847 (Iowa 2019), and, where appropriate, to construe it "differently than its federal counterpart," *id.* (quoting *State v. Brooks*, 888 N.W.2d 406, 410–11 (Iowa 2016)). "We also recognize our duty to 'interpret our constitution consistent with the text given to us by our founders,' and to 'give the words used by the framers their natural and commonly-understood meaning' in light of the 'circumstances at the time of adoption.' " *Burns*, 988 N.W.2d at 360 (first quoting *State v. Green*, 896 N.W.2d 770, 778 (Iowa 2017); then quoting *State v. Senn*, 882 N.W.2d 1, 8 (Iowa 2016)). It follows that when federal courts' interpretations of the Fourth Amendment are not consistent with the text and history of article I, section 8, we may conclude that those federal court interpretations should not govern our interpretation of article I, section 8. *Id.*

That very situation, the citizens say, is presented by Orange City's ordinance and its authorization of administrative warrants. In the citizens' view, the text and history of article I, section 8 prohibit the issuance of any warrant—administrative or otherwise—without the same probable-cause showing that we require for criminal-investigation warrants, that is, a reason to believe that an offense has been committed. *See, e.g.*, *State v. Seiler*, 342 N.W.2d 264, 266 (Iowa 1983) (en banc) (describing the probable-cause showing required for criminal-investigation warrants). But federal courts have interpreted the Fourth Amendment differently. Since the Supreme Court's 1967 decision in *Camara v. Municipal Court*, 387 U.S. 523 (1967), federal courts have read the Fourth Amendment to allow issuance of administrative warrants on a lesser

showing. Specifically, *Camara* held that in the context of administrative warrants for rental inspections, the Fourth Amendment's probable-cause requirement is satisfied

> if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

*Id.* at 538.

There is a substantial gap, then, between the citizens' reading of article I, section 8, on the one hand, and the federal *Camara* standard, on the other. While the citizens' reading of article I, section 8 would require evidence of *an actual violation* within a rental dwelling before a warrant can issue, the federal *Camara* standard would permit administrative warrants to issue *without* any "specific knowledge" of a violation within a "particular dwelling." *See id.*

What really troubles the citizens, though, is that the City's ordinance does not fill that gap. Although the ordinance permits the City to request administrative warrants, the ordinance does not expressly require a traditional showing of probable cause. Because the ordinance does not expressly impose that requirement, the citizens contend, the ordinance's inspection regime violates article I, section 8. And so the district court was right to declare that regime unconstitutional.

We disagree. For one thing, we note that in *State v. Carter*, our court said that the *Camara* standard applies under both the Fourth Amendment and article I, section 8. 733 N.W.2d 333, 336–37 (Iowa 2007). But even if we were to disavow *Carter*'s pronouncement and hold that article I, section 8 requires

traditional probable cause for administrative search warrants, we would still reject the citizens' challenge to the ordinance.

To understand why, it is important to recognize that the citizens' challenge is not an "as applied" challenge, that is, a challenge to the application of the ordinance to "a particular set of facts," such as an already-accomplished inspection or an already-issued warrant. *Kluender v. Plum Grove Invs., Inc.*, 985 N.W.2d 466, 470 (Iowa 2023) (quoting *Bonilla v. Iowa Bd. of Parole*, 930 N.W.2d 751, 764 (Iowa 2019)).[3]

Rather, the citizens are challenging the ordinance itself or, to be more specific, its mandatory inspection requirement. They ask for this entire aspect of the ordinance to be declared invalid. This request is properly understood as a facial challenge.

Because the citizens bring a facial challenge, they must meet our very high standards for such challenges. *See, e.g., Summit Carbon Sols., LLC, v. Kasischke*, ___N.W.3d___,___, 2024 WL 4861721, at *4–9 (Iowa Nov. 22, 2024) (rejecting facial challenge); *State v. Hightower*, 8 N.W.3d 527, 540–41 (Iowa 2024) (same); *Kluender*, 985 N.W.2d at 470–73 (same); *State v. West Vangen*, 975 N.W.2d 344, 353–54 (Iowa 2022) (same); *League of United Latin Am. Citizens of Iowa v. Pate*, 950 N.W.2d 204, 208–14 (Iowa 2020) (per curiam) (same).

---

[3]At oral argument, the citizens asserted that they were bringing an as-applied challenge in addition to a facial challenge. But we do not interpret the citizens' petition as raising an as-applied challenge. Nor do we interpret the citizens' appellate brief as raising an as-applied challenge. So we do not consider an as-applied challenge. *See State v. Houts*, 622 N.W.2d 309, 311–12 (Iowa 2001) (en banc). Moreover, even if an as-applied challenge were presented, it could not proceed. No warrant has been sought, no warrant has issued, and no inspection has occurred with respect to the citizens' rental properties. So any as-applied challenge would not be ripe. *See State v. Harrison*, 914 N.W.2d 178, 204–05 (Iowa 2018); *State v. Tripp*, 776 N.W.2d 855, 858–59 (Iowa 2010); *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 473–75 (Iowa 2004); *see also Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1056 n.4, 1060 (D. Minn. 2013) (concluding that the plaintiff's as-applied challenge was not ripe because "[a]t the hearing, . . . he had not yet applied for a license under the City Ordinance").

In a facial challenge, the challenger must prove that the targeted ordinance is "totally invalid and therefore, 'incapable of *any valid application.*' " *Bonilla*, 930 N.W.2d at 766 (quoting *Santi v. Santi*, 633 N.W.2d 312, 316 (Iowa 2001)). This sort of challenge is the "most difficult" to " 'mount successfully' because it requires the challenger to show [that] the statute [or ordinance] under scrutiny is unconstitutional *in all its applications.*" *Id.* (quoting *Honomichl v. Valley View Swine, LLC*, 914 N.W.2d, 223, 231 (Iowa 2018), *overruled on other grounds by Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67 (Iowa 2022)). Challenges of this kind are "disfavored for several reasons." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

> Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of "premature interpretation of statutes on the basis of factually barebones records." Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither " 'anticipate a question of constitutional law in advance of the necessity of deciding it' " nor " 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that " '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.' "

*Id.* at 450–51 (alteration in original) (first quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004); then quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring) (quoting *Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)); and then quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (plurality opinion))).

**B. Application.** We now apply these principles to the citizens' facial challenge. If our analysis reveals that "there is any set of facts where" the

ordinance's inspection regime could operate without violating article I, section 8, "we will reject the facial challenge." *Summit Carbon Sols., LLC*, ___N.W.3d at ___, 2024 WL 4861721, at *4; *accord Bonilla*, 930 N.W.2d at 764 ("A facial challenge is one in which no application of the statute could be constitutional under any set of facts." (quoting *Honomichl*, 914 N.W.2d at 231)).

Under this standard, the citizens' facial challenge must be rejected. It must be rejected because there are sets of facts where the ordinance could operate without violating article I, section 8. Here are three examples.

First, although the citizens emphasize situations where traditional probable cause will be absent, we can readily anticipate circumstances where traditional probable cause will be present. For instance, suppose a reliable neighbor reports to the city that a certain rental property has no smoke detectors. That report would surely satisfy traditional notions of probable cause. In that circumstance, the ordinance would authorize the City to seek an administrative warrant *while also* satisfying article I, section 8 as the citizens understand that provision. So, even under the citizens' reading of article I, section 8, the ordinance's warrant provisions can *sometimes* operate constitutionally.

Second, although the citizens focus on warrants, warrants are not the City's only option. Section 4.09 of the ordinance provides that "[i]f entry is refused the [City] inspector shall have recourse *to the remedies provided by law to secure entry*, including, *but not limited to*, obtaining an administrative search warrant to search the rental unit." (Emphasis added.) Thus, the ordinance plainly authorizes the City to pursue legal options that *do not involve* warrants. And, as the City notes, those nonwarrant legal proceedings could well include traditional due process features such as notice to the renters and opportunity to

be heard. Those nonwarrant proceedings may provide additional opportunities for the ordinance to operate without violating constitutional warrant requirements.

Finally, although the ordinance requires inspections of rental properties, it does not require that a city official perform those inspections. Section 4.02(2) of the ordinance defines "Exempt rentals" and goes on to state that "[r]ental units that are inspected by a certified third-party inspection organization will not require an inspection from the City of Orange City." This provides a clear path for private parties—not city officials—to conduct the needed inspections. And if no city official needs to perform an inspection, there will be no need for an administrative warrant and therefore no violation of article I, section 8's warrant requirements. *See, e.g., Infinite Green, Inc. v. Town of Babylon,* 162 N.Y.S.3d 424, 427–28 (App. Div. 2022) (holding that a town code that provided a third-party-inspection alternative did not violate "the United States Constitution or the New York Constitution against unreasonable searches and seizures").

These examples demonstrate that the ordinance's mandatory inspection regime can operate without violating article I, section 8. Therefore, the citizens' facial challenge cannot succeed.

**III. Conclusion.**

Because there are situations where the City's inspection requirement can operate constitutionally, the citizens' facial challenge fails. The district court erred in granting summary judgment in favor of the citizens and against the City. We reverse and remand for further proceedings consistent with this opinion.

**Reversed and Remanded.**