# In the Iowa Supreme Court

No. 25–0145

Submitted February 19, 2026—Filed May 22, 2026

**State of Iowa,**

Appellee,

vs.

**Brian Todd Thompson,**

Appellant.

Appeal from the Iowa District Court for Polk County, Celene Gogerty, judge.

A defendant appeals his convictions for two counts of theft by deception, arguing that the jury instructions misstated an element of the offense. **Affirmed.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, McDonald, and May, JJ., joined. Oxley, J., filed an opinion concurring in the judgment, in which McDermott, J., joined.

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson (argued) and Cory Engle (until withdrawal), Assistant Appellate Defenders, for appellant.

Brenna Bird, Attorney General, and Adam Kenworthy (argued), Assistant Attorney General, for appellee.

**Mansfield, Justice.**

### I. Introduction.

"From the example of the past, the present acts prudently so as not to imperil the future." *An Allegory of Prudence*, Nat'l Gallery, https://www.nationalgallery.org.uk/paintings/titian-an-allegory-of-prudence [https://perma.cc/8KY5-UFDV] (last visited May 13, 2026).

This statement was written by the Italian artist Titian in the sixteenth century, but it could apply to our job as state supreme court justices in the twenty-first century.

In this case, we are asked to hold under the Iowa Constitution that when a jury instruction omits or mischaracterizes an element of an offense, we should reverse and give the defendant a new trial automatically. In fact, we should do so *even if the error had no impact on the defendant's trial.* Our past example has been not to follow this practice. As an appellate court, we do not reverse for instructional errors—including omission and mischaracterization errors—when the error is harmless. We believe our existing precedent, which complies with the United States Constitution as interpreted by the United States Supreme Court, also complies with the Iowa Constitution. It is consistent with Iowa's constitutional history and assures that the defendant's jury trial will be fair. And the defendant's alternative proposal, we fear, would imperil the future by spurring unnecessary appeals and new trials over minor perceived defects in jury instructions.

Accordingly, for the reasons stated herein, we affirm the defendant's convictions and sentence.

**II. Facts and Procedural History.**

The defendant is charged in this case with posing as a bail bondsman and luring a detainee's girlfriend into paying him two separate installments of $3,000 each for a cash-only bond that didn't exist.

In early 2023, Cody McCall was in the Poweshiek County Jail, facing two criminal charges and being held subject to a $25,000 cash-only bond. McCall wanted to be bonded out, but he also had a parole violation, and he needed to wait until that matter was resolved. He spoke with his then-girlfriend Mary Wahl about making arrangements for bonding him out in late May when he expected his parole obligation to be discharged.

Wahl searched on Google for a bondsman, and the name of Brian Thompson came up first. In the listing, Thompson's name was associated with the bonding company Custom Solutions Investigations (CSI). In reality, Thompson had ceased working for CSI six months earlier. Wahl called the number listed and reached a "Gilbert," who said Thompson was still with CSI and gave Thompson's direct contact information to Wahl.

After some back-and-forth communication, Wahl and Thompson met at the Polk County Jail on or about March 3. Wahl paid Thompson $3,000 cash, which was to go toward the premium for the bond.

Thompson furnished various items of paperwork to Wahl. He had Wahl sign an "application" as co-indemnitor with an insurance company and gave Wahl a receipt bearing the name of the same insurance company. The application was completed by Thompson and stated that the insurance company would provide a $25,000 cash bond.

Thompson also provided Wahl with two forms in CSI's name for pledging collateral to CSI: one form for Wahl's vehicle and the other for a vehicle owned

by McCall's grandmother. Both vehicles were intended to be used as collateral. Wahl arranged for these collateral agreements to be filled out and returned them to Thompson.

In addition, Thompson provided Wahl with signed documentation purporting to show that he was pledging *his own home* as collateral for the bond because the vehicles would not be enough. Meanwhile, Wahl made another payment to Thompson of $3,000 on or about March 17 and some other smaller payments. These were to go to the stated bond premium of $7,500. Thompson gave Wahl a copy of a personal check purporting to show that he had transferred the payments to a surety to satisfy the bond premium.

The original plan was that Thompson would post the cash-only bond in Poweshiek County by May 20. This date was later changed by agreement to May 15.[1] As this date drew near, Wahl became anxious because Thompson was putting her off: "I just kept getting excuse after excuse on why he couldn't call me or why he couldn't meet with me." Thompson would respond that he was dealing with various issues in his life and business. Still, in his texts to Wahl, Thompson would say that everything was on schedule. Thompson provided Wahl with a formal letter from "Brian Thompson C.S.I. Bail Bonds" which stated that the bond had been fully paid for and would be posted on May 15, "plus or minus 1 day and on very rare occasions 2 days."

When May 15 arrived, Thompson would not respond to Wahl's attempted communications or confirm that he had made arrangements to post the bond. Wahl decided to contact CSI and learned that Thompson had not worked there for about eight months. Wahl texted Thompson, informed him that she had just

---

[1]Because of the parole issue, McCall would not be able to leave jail until May 26 in any event.

learned this, and advised him that she wanted her money back or she would be contacting law enforcement.

Thompson played for time. He agreed to meet with Wahl the next day but was a no-show, claiming car trouble. In a text to Wahl that evening, Thompson wrote in part,

> I want to say this again to you and [McCall's grandmother], I'm sorry. You guys put your faith[] in me and I let you down. I also realize, that since neither of you know me very long, you probably have no idea how hard that is for me to swallow right now. In fact, I was hoping that if I kept reminding myself that it wasn't intentional, it would somehow ease the guilt. I quickly realized, that just because I didn't intend to let you down, doesn't change the fact that I did.

Wahl found another bonding company. She paid that company $3,000 to bond out McCall, who was released on May 26. Still, she was unsuccessful in getting any of her money back from Thompson.

After Wahl contacted the police, Thompson was arrested and charged by trial information with two counts of theft by deception in the second degree, a class "D" felony. *See* Iowa Code §§ 714.1(3), .2(2) (2023). The State gave notice that it would seek a habitual offender enhancement because Thompson had been convicted of felonies twice previously. *See id.* §§ 902.8, .9(1)(*c*).

The case went to trial in the Polk County District Court in May 2024. Wahl was the lead witness, but the State also presented testimony from other witnesses including CSI's owner. The owner confirmed that Thompson had left CSI's employment in September 2022. He also testified that Thompson was using CSI's name and standard logo without authorization when dealing with Wahl. In addition, he explained that a cash-only bond, such as Thompson had purported to be obtaining, would never involve an insurance company. The cash would come from the bonding company itself. Finally, he added that he had never seen

a bail bondsman use his own home as collateral, as Thompson claimed to be doing.

Thompson did not testify or call any witnesses. His main defense at trial was that this was a "contractual matter" and "meant for the civil courts." He argued that he had acted in good faith and that a series of unfortunate events had prevented him from posting the bond. He further argued that Wahl had not given him until May 26, 2023 (McCall's earliest possible release date) to perform the agreement and had instead contacted the police on May 15.[2]

During trial, the district court advised the attorneys that it would be giving the following marshaling instruction on the first count of theft by deception:

> In Count I, the State must prove all of the following elements of Theft:
>
> 1. On or about March 3, 2023, the defendant did obtain the transfer of possession, control, or ownership of the property of Mary Wahl.
>
> 2. The defendant knowingly acted with deception.
>
> If the State has proved all of the elements, the defendant is guilty of theft. You must then determine the degree of Theft, as explained to you in Instruction No. 17. If the State has failed to prove any one of the elements, the defendant is not guilty.

The marshaling instruction for the second count was identical except for the date.

Thompson objected to these instructions. He asked the court to include the words "by deception" in the first element. As he explained,

> That way it's [clear] that the defendant obtained possession, control, ownership of property of Mary Wahl by deception. The way it was provided by the Court, I felt like there was a disconnect between the

---

[2]Thompson also pointed out that he had offered to give Wahl her money back at one point and that she had declined the offer. However, this took place when Wahl was simply expressing anxiety and *before* Wahl learned that she had been misled. When Wahl began asking for her money back starting May 15, Thompson declined to do so.

> deception and the transfer of possession, control, ownership of property. I just wanted to make sure that it's deception that led to that, not just transfer of property and then a separate deception.

The district court declined to alter the instruction, and was supported in that position by the State. Both the court and the State acknowledged that the deception had to cause the transfer of property, but they took the view that the existing marshaling instruction adequately conveyed that point.

In closing argument, the State argued that it had met the first element of theft by proving that Wahl made two transfers of $3,000 to Thompson. And to show that it had proved the second element, the State enumerated various acts of deception by Thompson: his use of CSI's name, his creation of false documents, his claim to be using an insurance company, and his claim to be posting his own house as collateral. The State ended its rebuttal argument as follows:

> Two days in March, Ms. Wahl gave him $3,000 on each occasion for the purposes of effecting a bond for her then-boyfriend, and the entirety of that time, he was giving her false information. He was deceiving her. He was filling her with this misconception that he could and would do it, all the time knowing that he was not being honest with her, and in the end, it was never going to happen. And they want you to blame her because she finally got wise.

> This man committed these crimes, Theft in the Second Degree by deception two different occasions. More than $1,500 each occasion, that's Theft in the Second Degree.

The jury returned guilty verdicts on both counts. Thompson moved for a new trial, asserting among other grounds that the "marshalling instructions failed to accurately state the legal elements for theft by deception." The district court overruled the motion. Thompson then stipulated as to his prior convictions and was found to be a habitual offender.

The district court sentenced Thompson to consecutive fifteen-year terms of imprisonment with three-year minimums as a habitual offender, but suspended the sentence and placed him on probation. Thompson appeals.

### III. Standard of Review.

"We review challenges to jury instructions under a corrections-of-errors-at-law standard." *State v. Cooley*, 21 N.W.3d 137, 141 (Iowa 2025).

### IV. Analysis.

On appeal, Thompson argues that the district court's marshaling instruction was erroneous because it allowed the jury to convict him without proof of a connection between the deception and the two transfers of $3,000. He maintains that the error was not harmless, but even if it was, harmless error cannot apply to an instructional error relating to the mischaracterization or omission of an element of the offense.

**A. The Marshaling Instruction Was Technically Incorrect, But the Error Was Harmless.** We agree that the instruction given by the district court was technically incorrect. In theory at least, it could have allowed a jury to convict a defendant for obtaining property of another and knowingly acting with deception—but without a connection between the two events. The statute defines the offense as "[o]btain[ing] the labor or services of another, or a transfer of possession, control, or ownership of the property of another, or the beneficial use of property of another, *by deception*." Iowa Code § 714.1(3) (emphasis added). In other words, the deception must induce the transfer.

Accordingly, the Iowa State Bar Association (ISBA) standard criminal jury instruction links the deception and the obtaining of property as follows:

> 2. The defendant knowingly deceived (victim) in one or more of the following ways: . . . .

3. The defendant obtained [labor or services] [transfer of possession] [control or ownership] [the beneficial use of property] from (victim) *by the deception.*

Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 1400.10 (2025) (alterations in original) (emphasis added).

However, the ISBA standard instruction actually includes three elements. The first element asks the jury to determine whether the defendant "did (set forth acts of deception - words, conduct, or representation) to (victim)." *Id.* In opting for its own instruction, the district court expressed a concern that the ISBA instruction "does not seem to match the language of the Code, and . . . the elements . . . listed [are] duplicative." We to some extent share that concern, but we believe the court's instruction would have been more accurate while still succinct if it had been reworded as follows, replacing "acted with deception" with "obtained that property by deception":

1. On or about March 3, 2023, the defendant did obtain the transfer of possession, control, or ownership of the property of Mary Wahl.

2. The defendant knowingly obtained that property by deception.

Having said that, we believe any error was harmless. A jury hearing and reading the instruction actually given would likely conclude that the two elements went together. That is, Thompson's "act[ing] with deception" had to be the basis for "the transfer of possession, control, or ownership of the property of Mary Wahl." It couldn't be unrelated or just something in the background. The standard murder instruction requires the jury to find that the defendant "acted with malice aforethought"—without specifying a time—and we rely on the jurors' common sense to discern that the time in question must be when the defendant shot the victim. *State v. Lyman*, 776 N.W.2d 865, 876–77 (Iowa 2010), *overruled*

*on other grounds by*, *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). Likewise, in the present case, we think the jurors very probably would have read the instruction as requiring a link between the deception and the obtaining of money.

After all, the jury knew that the crime was theft by deception. When the information was read at the beginning of trial, the jury learned that the defendant was being charged with obtaining two transfers of property in excess of $1,500 "by deception"—one on or about March 3, 2023, and the other on or about March 17, 2023. And in rebuttal closing argument, the State characterized the case as a "string of deception so that he can get this money from her," and concluded: "This man committed these crimes, Theft in the Second Degree by deception [on] two different occasions."

And there is overwhelming evidence that Thompson obtained the two transfers of $3,000 from Wahl through deception. Thompson pretended to be a bondsman working for an established bonding company when he wasn't. He falsified documents using that company's name and without that company's authorization. He claimed to have arranged a $25,000 cash bond through an insurance company, and provided documents to Wahl allegedly confirming this arrangement, but in fact insurance companies don't provide cash bonds. These points were undisputed.

Thompson didn't contest that Wahl's payments were induced by his own representations. Rather, Thompson asserted two other trial defenses. First, he urged that "[t]his is a contractual matter" that's "supposed to be in the civil court building." Second, and relatedly, he argued that Wahl should have given him until May 26 (when McCall actually needed the bond in place so he could leave jail) to fulfill his promises. These defenses—to the extent they even were

defenses—would not alter the facts as to how Thompson obtained Wahl's money. He did so through a series of deceptions. Neither Thompson nor anyone else ever suggested that Thompson's false representations were irrelevant to Wahl's decision to give him her money.

In sum, the marshaling instruction was technically defective on a point that was not contested at trial. We find that the error was harmless beyond a reasonable doubt. *See Neder v. United States*, 527 U.S. 1, 7–9, 15–17 (1999) (characterizing a jury instruction that omits an element of the offense as a constitutional error and explaining that the verdict may be upheld if the reviewing court concludes that the error was harmless beyond a reasonable doubt); *State v. Hanes*, 790 N.W.2d 545, 550 (Iowa 2010) (confirming that the harmless-beyond-a-reasonable-doubt standard applies "to errors of a constitutional dimension in jury instructions").

**B. Harmless-Error Analysis Applies Here.** Thompson argues that harmless-error analysis should be inapplicable *in Iowa* to instructional errors that omit an element or misadvise the jury on the elements of an offense. Thompson insists automatic reversal is required under the Iowa Constitution "because such errors reduce the State's burden of proof by allowing the jury to convict on less than the statutorily required elements." (Emphasis omitted.)[3]

1. *Recent dicta indicating that the issue is unresolved in Iowa.* Thompson directs our attention to some comments we made seventeen years ago in *State v.*

---

[3]The State maintains that Thompson failed to preserve below his argument that harmless-error analysis does not apply to certain instructional errors concerning the elements of an offense that have the effect of lowering the prosecution's burden of proof. We disagree with the State's position. The harmless-error doctrine is a principle of *appellate* review, and there is no need to preserve something below that isn't available until appeal. *See State v. Lindaman*, 30 N.W.3d 547, 560 (Iowa 2025) ("Harmless error review is an appellate function used to determine whether relief is appropriate under the circumstances.").

*Schuler*, 774 N.W.2d 294, 299–300 (Iowa 2009)—and have since repeated—suggesting that this issue has not been resolved in our state.

*Schuler* arose out of a violent altercation outside of a club. *Id.* at 295. There were a number of participants. *Id.* The victim received "life-threatening injuries," allegedly at the hands of the defendant. *Id.* at 296. At trial, the defendant objected to a marshaling instruction that, similar to the one here, didn't require the jury to find that the defendant's wrongful conduct *caused* the victim's injuries. *Id.* at 298. That is, the jury was instructed that the defendant committed willful injury causing serious injury if it found the following:

> 1. On or about August 31, 2006, the Defendant punched, kicked, and/or grabbed Lucas Spinelli.

> 2. The Defendant specifically intended to cause a serious injury to Lucas Spinelli.

> 3. Lucas Spinelli sustained a serious injury.

*Id.* The defendant objected that "subsection 3 . . . allowed the jury to find him guilty if they determined that Spinelli *sustained* a serious injury without finding that Russell's actions *caused* his serious injury." *Id.* We agreed with the defendant's objection and reversed his conviction. *Id.* at 299–300. We also concluded that the error was not harmless because there were multiple participants in the fracas and differing accounts of what happened. *Id.* at 300. Spinelli's serious injury could have been inflicted by someone other than the defendant. *Id.*

In the course of the opinion, we also acknowledged the defendant's alternative argument—similar to the defendant's here—that "where there is an error in the instructions related to an element of a theory of guilt, reversal is required." *Id.* at 299. We noted that in *Neder v. United States,* "a sharply divided court held that an erroneous jury instruction that omits an element of the offense

is subject to harmless-error analysis." *Id.* (citing *Neder*, 527 U.S. at 10). And we further noted that some states "have declined to follow the *Neder* majority." *Id.* Additionally, we indicated that the authority is unclear in Iowa whether an automatic-reversal or a harmless-error approach would apply. *Id.* at 299–300. Yet we concluded that we didn't need to decide whether we follow *Neder* in Iowa because the instructional error wasn't harmless in any event. *Id.* at 300.

With hindsight, we observe that *Schuler* did not comprehensively survey our prior caselaw. In *Schuler* we noted that in a 1983 decision, we had held that an error or omission in an instruction that related to an element of the offense *was* subject to harmless-error analysis. *Id.* at 299–300 (citing *State v. Seiler*, 342 N.W.2d 264, 268 (Iowa 1983) (en banc)). We then cited a 2006 case supposedly standing for the opposite proposition. *Id.* at 300 (citing *State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006), *superseded in part by statute*, 2011 Iowa Acts ch. 8, § 2 (codified at Iowa Code section 622.10(4)(*a*)(2)(a) (Supp. 2011)), *as recognized in*, *State v. Leedom*, 938 N.W.2d 177 (Iowa 2020)). But the 2006 case wasn't on point because it involved a *different* issue—whether reversal is required when a legally invalid and a legally valid theory are both submitted to the jury and the jury returns a general verdict of guilty. *See Heemstra*, 721 N.W.2d at 558–59.[4]

In the ensuing years since our 2009 *Schuler* decision, we have occasionally made additional statements in passing that it remains an open question in Iowa whether harmless error applies to an erroneous jury instruction that omits or misdescribes an element of the offense. *See State v. Harris*, 891 N.W.2d 182, 188 n.5 (Iowa 2017); *State v. Hoyman*, 863 N.W.2d 1, 16 (Iowa 2015); *Hanes*, 790

---

[4]Supreme Court authority dictates reversal in that circumstance. *See Griffin v. United States*, 502 U.S. 46, 58–59 (1991).

N.W.2d at 550; *see also State v. Shorter*, 945 N.W.2d 1, 12 (Iowa 2020) (Appel, J., concurring specially). Each time, though, we simply cited *Schuler* and reiterated what we said there without plowing new ground.

*State v. Cooley*, decided just last year, is our latest example. 21 N.W.3d 137. *Cooley* involved a sex offender who was convicted of failing to report a change in residency. *Id.* at 139. He maintained that the jury instructions were flawed because they omitted the statutory requirement that he "appear in person." *Id.* He argued that he *had* appeared in person, instead of reporting by telephone as directed by the sheriff during the COVID-19 pandemic. *Id.*

As in *Schuler*, we reversed after concluding that the marshaling instruction omitted a necessary element and that the error was not harmless. *Id.* at 144–45. But in the opinion, we again cited *Schuler* and remarked that "[w]hether harmless error even applies when an element is omitted from jury instructions does not have a clear answer in our caselaw." *Id.* at 144.

2. *Iowa caselaw indicating that the issue is resolved.* We think a closer examination of our precedent demonstrates that we have consistently applied harmless-error review to the type of error involved in this case. We begin with the 1983 decision mentioned in *Schuler*.

In *State v. Seiler*, the defendant was charged with felony murder. 342 N.W.2d at 267. He objected to a jury instruction. *Id.* The instruction stated, erroneously, that burglary would sustain a felony murder conviction, without a limitation to *first-degree* burglary. *Id.* at 267–68. Although the instruction "broadened the potential for a felony-murder conviction by eliminating the physical injury requirement," we found that the error did not prejudice the defendant and we declined to reverse for a new trial. *Id.* at 268. We explained,

> An error in instructing the jury does not necessitate reversal unless
> it is prejudicial. The facts presented at defendant's trial conclusively

show a violent burglary had been committed. The question was whether defendant was the person who had committed it. The evidence of intentionally inflicted physical injury was overwhelming.

*Id.* (citation omitted). Thompson, in effect, urges us to overrule *Seiler* and adopt the position of the lone dissenter in that case. *See id.* at 268–69 (McCormick, J., dissenting).

Importantly, *Seiler* is consistent with many other Iowa decisions. Going back to the nineteenth century, and continuing into the twentieth century, we have consistently applied harmless-error analysis when a jury instruction improperly omitted something that the state had to prove but the record showed that the omission could not have prejudiced the defendant. *See State v. Shilinsky*, 81 N.W.2d 444, 448 (Iowa 1957) ("We have several times held that failure to include in the instructions an element which was not in dispute is not ground for reversal."); *State v. Chumley*, 294 N.W. 764, 767–68 (Iowa 1940) ("Appellant contends that by this instruction the court undertook to gather together the elements of the crime and committed reversible error in failing to instruct the jury that they must find that the motor vehicle was in fact stolen from Allen Wichman . . . . For there to be any merit in this contention, it would be indispensible that there be some issue on the question whether or not the car was in fact stolen from Allen Wichman." (citation omitted)); *State v. Fortune*, 195 N.W. 740, 741 (Iowa 1923) ("Ownership of the building in question is an essential ingredient of the crime charged. The indictment alleged that the store building broken and entered was 'then and there the property of George H. Wheeler,' and that the goods, wares, and merchandise therein 'were kept for sale, used, and deposited by the said George H. Wheeler.' The indictment was read into the court's instructions, and it is the accepted rule that it is not necessary to specifically instruct on matters admitted or established beyond dispute. We will

not presume prejudice."); *State v. Shank*, 44 N.W. 241, 242 (Iowa 1890) ("We should not deem it necessary to reverse a judgment for the omission of the court to instruct the jury that they could not convict unless they found a fact which was substantially admitted of record. In our opinion, the error in question was without prejudice."); *State v. Goode,* 27 N.W. 772, 773 (Iowa 1886) ("To constitute the crime contemplated by the statute it must appear that the money came into the defendant's hands by virtue of his employment. It is said that the jury was nowhere so instructed. To this we may say that it does not appear that we have all the instructions before us. Besides, the undisputed evidence shows that the defendant had authority to receive the company's money as their station agent, and did so receive it."); *State v. Guisenhause,* 20 Iowa 227, 230–31 (1866) ("It is objected that this instruction was erroneous because it omits, with respect to the effect of a sale, or keeping to sell, the words 'in violation of the provisions of this act,' . . . . [T]here was no evidence or circumstances showing that the sales proved by the State, were of the character allowed by the statute, but the evidence clearly established the contrary. Having regard to the evidence the instruction was not erroneous; at least there was no error which could have prejudiced the defendants."); *see also Shorter*, 945 N.W.2d at 9 ("We have articulated the standard for reviewing instructions that misstate the elements of an offense with a focus on prejudice . . . .").

Citing three other cases, Thompson claims that "Iowa courts have previously found that the failure to instruct on an essential element is *per se* reversible error." But in the three cases he cites, harmless error wasn't discussed or raised. *See State v. Pearson*, 804 N.W.2d 260, 265 n.1 (Iowa 2011); *State v. Watts*, 223 N.W.2d 234, 236–37 (Iowa 1974); *State v. Straw*, 185 N.W.2d 812,

816 (Iowa 1971). In sum, our longstanding precedent favors a harmless-error rule.

3. *Thompson's request that we adopt Justice Scalia's dissent in* Neder *as a matter of Iowa constitutional law.* Regardless, Thompson argues that as a matter of Iowa constitutional law, we should now adopt Justice Scalia's dissenting opinion in *Neder*.

Twenty-seven years ago, the United States Supreme Court held in *Neder* that appellate review of an objected-to jury instruction that omitted an essential element of the offense was subject to the harmless-error rule. 527 U.S. at 4. The Court rejected the notion that such an approach violated the Sixth Amendment to the United States Constitution. *Id.* at 15. The Court reasoned that "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9. The Court observed that it had "often applied harmless-error analysis to cases involving improper instructions on a single element of the offense." *Id.* And logic and pragmatic considerations dictated that the same rule should apply whether an element was omitted or misdescribed. *Id.* at 13–14. Otherwise, the majority noted, the "far more common subcategory" of cases where an element was merely misdescribed—and harmlessly so—would now be in jeopardy of appellate reversal. *Id.* at 14. The majority did not see anything unconstitutional in an appellate court exercising its normal appellate function— that is, "ask[ing] whether the record contains evidence that could rationally lead to a contrary finding" if an error had not occurred. *Id.* at 19.

Justice Scalia, dissenting in part and joined by two other justices, urged that an omission or misdescription of an element of an offense cannot be harmless because the Sixth Amendment requires the jury to make a finding on

each element of the offense correctly stated. *Id.* at 33–37 (Scalia, J., concurring in part and dissenting in part). He characterized the error in *Neder* as "structural" and therefore not subject to harmless-error review, so long as a proper objection to the instruction was made below. *Id.* at 32–34. Justice Stevens, concurring in the judgment, noted that if Justice Scalia were being consistent, he would require reversal "regardless of whether defense counsel made a timely objection." *Id.* at 28 (Stevens, J., concurring in part and concurring in the judgment). As he put it, "I find tension between the force of Justice Scalia's eloquent rhetoric and the far narrower rule that he actually espouses." *Id.*

*Neder* remains the law of the land for Sixth Amendment purposes. *See, e.g., Hurst v. Florida*, 577 U.S. 92, 102 (2016) (after determining that the state courts erred by denying the defendant's Sixth Amendment right to a jury finding of aggravating circumstances, citing *Neder* remanded for the state courts to consider whether the error was harmless); *McFadden v. United States*, 576 U.S. 186, 197 (2015) ("We have recognized that even the omission of an element from a jury charge is subject to harmless-error analysis."). But of course, it does not bind us in our interpretation of the Iowa Constitution.

4. *Reasons why we decline to adopt the* Neder *dissent as Iowa constitutional law.* Noting that a few states have embraced Justice Scalia's dissent under their own constitutions, Thompson asks us to depart from our own precedent and do the same. We decline to do so for a number of reasons.

First, it has long been a fundamental rule in our state that appellate courts do not reverse criminal convictions over trial errors that do not matter. This

background principle was part of our state's legal fabric when our constitution came into effect.[5]

Consider the following from the two versions of the Iowa Code that bookend our 1857 constitution. The Code of 1851 states, "The supreme court must give judgment without regard to technical errors or defects which do not affect the substantial rights of the parties." Iowa Code § 3097 (1851). The Code of 1860 states, "[T]he supreme court must examine the record and without regard to technical errors or defects, which do not affect the substantial rights of the parties, render such judgment on the record as the law demands." *Id.* § 4925 (1860); *see also State v. Thompson*, 19 Iowa 299, 300 (1865) ("The technical exactness of the common law, as enforced in criminal prosecutions, whereby many guilty persons escaped the just penalties due their crimes, and which justly became the reproach of that system of jurisprudence, has been wisely superseded in this State by the Revision of 1860.").

The 1860 language endured in Iowa for over a century, until the criminal law revision that took effect in 1978. *See* 1976 Iowa Acts ch. 1245 (ch. 2), § 1420 (codified at Iowa Code § 814.20 (Supp. 1977)). But the principle remains. *See State v. Warren*, 955 N.W.2d 848, 858 (Iowa 2021) ("It is a fundamental rule of Iowa law that an appellate court will not disturb the judgment of the district court where the record shows that the error cannot operate to the prejudice of the party attacking the judgment. This has been the law governing this jurisdiction since the first term of the territorial supreme court.").

---

[5]Harmless error is not a concept that one finds in the *text* of the Iowa Constitution. *None* of the trial-related rights enumerated in article I, sections 9 or 10 expressly provide that they are subject to a harmless-error exception when reversal on appeal is sought. Yet we apply the harmless-error doctrine regardless. Properly framed, the question here is whether we, as an appellate court, should apply a traditional rule of appellate review.

In 1866, when our constitution was essentially hot off the presses, our court invoked the "without regard to technical errors" provision in declining to reverse a conviction over the omission of an element from a jury instruction. *Guisenhause*, 20 Iowa at 230. And ninety-one years later, in *State v. Shilinsky*, we cited the same provision when we reiterated that "failure to include in the instructions an element which was not in dispute is not ground for reversal." 81 N.W.2d at 448.

Given this history, we are unable to say that the Iowa Constitution forbids us from doing what the legislature told us to do, and what we have done continuously since the 1860s. While a criminal defendant has a right to a jury finding of guilt on all elements of the offense, that does not mean that, *on appeal*, the criminal defendant has a right to overturn the criminal conviction for a harmless instructional error.

Other trial errors are subject to harmless-error review, even when they are of constitutional dimension. *See State v. Brimmer*, 983 N.W.2d 247, 270 (Iowa 2022) (distinguishing between "trial errors" which are subject to harmless error and "structural errors" which are not); *see also State v. White*, 9 N.W.3d 1, 14–15 (Iowa 2024) (applying harmless-error analysis to a confrontation clause violation); *State v. Gibbs*, 941 N.W.2d 888, 900–01 (Iowa 2020) (applying harmless-error analysis to a jury instruction that violated the defendant's constitutional right against self-incrimination); *State v. Peterson*, 663 N.W.2d 417, 430–35 (Iowa 2003) (applying harmless-error analysis to admission of evidence in violation of the defendant's Fifth, Sixth, and Fourteenth Amendment rights). Instructional errors relating to the elements of an offense should receive the same treatment.

Also, in Iowa, we have other well-established standards of appellate review, such as error preservation. Error preservation applies to jury instructions. *See* Iowa R. Civ. P. 1.924; Iowa R. Crim. P. 2.19(4)(*g*); *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) ("We have repeatedly held that timely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review."). That is true even when the claimed error relates to an element missing from the marshaling instruction. *See State v. Propps*, 376 N.W.2d 619, 623 (Iowa 1985) (acknowledging that the marshaling instruction omitted an element of the offense but stating that "[b]ecause his trial counsel failed to object, defendant may not now assert error on appeal"). Since harmless error is an equally time-honored principle of appellate review in Iowa, it seems logical that it too would apply in like circumstances.

Whatever might be said of the constitutional history and tradition of other states, our history and tradition simply do not support discarding the harmless-error rule for instructional errors.

Just last year, the Kansas Supreme Court was asked to decide the same question that is now before us. *State v. Gleason*, 571 P.3d 522 (Kan. 2025) (per curiam). In ruling that the omission of an essential element of the crime in a jury instruction was subject to harmless-error review on appeal, the court reasoned that it was "imperative" to focus on the 1859 timeframe, when the Kansas Constitution was ratified. *Id.* at 534. Its survey of that time period led it to conclude that all instructional errors, including those involving omitted elements, led only to a presumption of prejudice that could then be rebutted by a showing the error was harmless. *Id.* at 534–36. As the court summarized, "[A]t ratification, errors striking at the core function of the jury—that is, errors recognized by the common law at ratification—did not require automatic

reversal. Instead, the 'inviolate' right included only a right to a presumption of prejudice on appeal; not a right to automatic reversal." *Id.* at 536. Iowa's jurisprudence at the time of ratification resembles that of Kansas.

Thompson cites a few states that have opted for the approach taken in Justice Scalia's *Neder* dissent, but we are not persuaded by their example. In *Jordan v. State*, 420 P.3d 1143, 1155–56 (Alaska 2018), the Alaska Supreme Court concluded that structural error should be the standard, but only for a "failure to instruct the jury on an essential *and contested* element of a crime." (Emphasis added.) This is Scalia-lite, and allows for harmless error to be the approach when the element isn't contested or was simply misstated. In *State v. Kousounadis*, 986 A.2d 603, 615–16 (N.H. 2009), the New Hampshire Supreme Court also followed a structural-error approach when an instruction omitted the definition of a deadly weapon, but noted that it had followed that same approach under its state constitution before *Neder*. In *Harrell v. State*, 134 So. 3d 266, 270–75 (Miss. 2014) (en banc), the Mississippi Supreme Court likewise noted that its own precedents—except for a 2002 case that it overruled—had not authorized a harmless-error exception for failure to charge on an essential element of a crime. Our situation is different. Our precedent, and most importantly the state of the law as of the adoption of our constitution, support a harmless-error level of review.

Additionally, many other states besides our own and Kansas follow a harmless-error approach. *See, e.g., People v. Merritt*, 392 P.3d 421, 424–29 (Cal. 2017); *Griego v. People*, 19 P.3d 1, 7–8 (Colo. 2001) (en banc); *State v. Faust*, 678 A.2d 910, 918–20 (Conn. 1996); *State v. McDermott*, 505 P.3d 678, 685 (Idaho 2022); *Commonwealth v. McCombs*, 304 S.W.3d 676, 680–81 (Ky. 2009); *Commonwealth v. Ronchi*, 202 N.E.3d 499, 520–21 (Mass. 2023); *People v.*

*Cornell*, 646 N.W.2d 127, 142–43, 143 n.17 (Mich. 2002); *State v. Bunch*, 689 S.E.2d 866, 868–69 (N.C. 2010); *Granzer v. State*, 193 P.3d 266, 271–72 (Wyo. 2008).

This leads to our final point. There are sound practical reasons not to overrule our cases and adopt Thompson's proposed automatic-reversal rule. As the Supreme Court majority pointed out in *Neder*, it could be quite difficult to determine what cases the rule applies to. *See* 527 U.S. at 14–15. Instructional errors come in many shapes and sizes and are raised in many criminal appeals. How would one distinguish between an instruction that omits an element, an instruction that omits part of an element, an instruction that mischaracterizes an element, and an instruction that merely lessens the state's burden of proof in some way? Do the distinctions even matter? In our view, adopting Justice Scalia's dissent in a consistent and manageable way would ultimately mean eliminating harmless-error review for most instructional errors, so long as the defendant lodged an objection. And, as Justice Stevens points out, if the right to a jury trial on all elements transcends even the normal limits on appellate review, then why is a trial court objection even necessary? *See id.* at 28 (Stevens, J., concurring in part and concurring in the judgment).

An Iowa trial judge is obligated to give the defendant a marshaling instruction that accurately covers all elements of the crime, but if the judge slips up and fails to do so, our appellate review should be guided by the historic standards of appellate review that have been baked into our constitutional system since 1857—unless modified by legislation or rule.

**V. Conclusion.**

For the foregoing reasons, we affirm Thompson's convictions and sentence.

**Affirmed.**

Christensen, C.J., and Waterman, McDonald, and May, JJ., join this opinion. Oxley, J., files an opinion concurring in the judgment, in which McDermott, J., joins.

**Oxley, Justice (concurring in the judgment).**

"If it is not necessary to decide more to dispose of a case, then it is necessary *not* to decide more." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring in the judgment).

"[T]echnically incorrect" instructions that only allow a jury "[i]n theory" to convict a defendant without a causal connection between the identified elements of the offense do not entitle a defendant to a new trial. Not because the error was harmless, but because there was no legal error in the instruction. Yet the majority skims over the analysis of whether the instruction was legally erroneous to decide the appeal on harmless-error grounds. This then lets it broadly conclude that harmless-error analysis applies to instructional error that arguably omits an element of an offense.

Thompson's conviction should be affirmed because the jury instructions, read as a whole, do not eliminate an element of the offense of theft by deception. Judicial restraint requires us to leave the constitutional issue to a case where it actually matters. I therefore concur in the judgment.

I.

Jury instructions that materially misstate the law generally require reversal. *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 892, 902 (Iowa 2015); *see also Koenig v. Koenig*, 766 N.W.2d 635, 646 (Iowa 2009) (holding that an instruction that improperly allocated the burden of proof misstated the law, requiring reversal). So too do instructions that are misleading or confusing. We have explained that "an instruction is misleading or confusing if it is 'very possible' the jury could reasonably have interpreted the instruction incorrectly."

*Rivera*, 865 N.W.2d at 902 (quoting *McElroy v. State*, 637 N.W.2d 488, 500 (Iowa 2001)).

Yet, we have also consistently said that "jury instructions need not be perfect." *State v. Ross*, 986 N.W.2d 581, 586 (Iowa 2023); *accord Rivera*, 865 N.W.2d at 902 ("In determining whether an instruction is inaccurate, misleading, or confusing, we look to the instructions as a whole and do not require perfection."); *Moser v. Stallings*, 387 N.W.2d 599, 605 (Iowa 1986) ("Although the instructions are not perfect, they did not deprive the plaintiff of a fair trial."). "Instructions must correctly state the law, but they do not need to 'contain or mirror the precise language of the applicable statute.'" *State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012) (quoting *State v. Schuler*, 774 N.W.2d 294, 298 (Iowa 2009)), *overruled on other grounds by*, *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). An instruction is not required to track "the language of requested instructions so long as the topic is covered." *Id.* at 141–42 (quoting *State v. Veal*, 564 N.W.2d 797, 812 (Iowa 1997), *overruled in part on other grounds by*, *State v. Hallum*, 585 N.W.2d 249 (Iowa 1998), *vacated*, 527 U.S. 1001 (1999)); *see also State v. Canal*, 773 N.W.2d 528, 533 (Iowa 2009) ("Although the court could have phrased the instruction to say [as the defendant requested], 'mere nudity does not constitute obscenity,' Canal's trial counsel did not provide ineffective assistance because of his failure to object to the generally accurate instructions."); *State v. Rudd*, 454 N.W.2d 570, 572 (Iowa 1990) ("Uniform instruction 3007 could be improved by language making it clear that constructive possession is not established from a mere showing that substances were found on the premises over which the accused shared dominion and control. But we cannot believe the jury would have derived such an understanding from the instructions here, taken as a whole." (footnote omitted)),

*overruled on other grounds by*, *State v. Webb*, 648 N.W.2d 72 (Iowa 2002). "Ultimately, we are looking for whether the 'instructions are misleading and confusing' when read as a whole." *Ross*, 986 N.W.2d at 586 (quoting *Rivera*, 865 N.W.2d at 902). Thus, "if a review of the instructions 'leads to the *inevitable* conclusion that the jury *could not* have misapprehended the [instruction],' then the challenge is without merit." *Rivera*, 865 N.W.2d at 902 (quoting *Moser*, 387 N.W.2d at 605).

Here, the district court found the uniform jury instruction on theft-by-deception confusing, so it broke the marshaling instruction for each count into two elements and moved the relevant definition of deception into a subsequent instruction. It explained during the instruction conference that it's "goal in instructions is to make sure they're accurate and they're not confusing, and I think it gets -- when you put too much in the marshalling instructions, it gets confusing." In explaining his request to add the phrase "by deception" to the first element, Thompson's attorney said he wanted to ensure there was no "disconnect between the deception and the transfer of possession, control, ownership of property. I just wanted to make sure that it's deception that led to that, not just transfer of property and then a separate deception." The State agreed with the district court that the causal connection was evident in the two-element marshaling instruction without adding "by deception" to the first element, and the district court left its proposed instruction alone.

The majority agrees that the jurors "very probably would have read the instruction as requiring a link between the deception and the obtaining of money." It then explains why the "technical[]" deficiency was harmless, recounting undisputed facts from the record showing the strength of the

evidence that Thompson obtained the transfers of cash from Wahl through deception.

When read together, *see Ross*, 986 N.W.2d at 586, the instructions adequately instructed the jury of the link between the two elements identified in the marshaling instruction. In addition to the marshaling instruction at issue, an earlier instruction identified the trial information as the formal charging document. That document was read to the jury prior to opening statements:

> Comes now, Kimberly Graham, as County Attorney of Polk County, and by the name and authority of the State of Iowa, accuses Brian Todd Thompson of committing the following crimes in Polk County, Iowa:

> Count I: Theft in the Second Degree, in violation of Iowa Code sections 714.1 and 714.2(2), on or about March 3, 2023, by obtaining a transfer of possession, control, or ownership of the property of another *by deception*, the value of which exceeds $1,500.

> Count II: Theft in the Second Degree, in violation of Iowa Code sections 714.1 and 714.2(2), on or about March 17, 2023, by obtaining a transfer of possession, control, or ownership of the property another *by deception*, the value of which exceeds $1,500.

(Emphases added.) Putting the marshaling instruction together with the trial information read to the jury, the instructions included the "by deception" link that Thompson now complains was missing. *See State v. Fortune*, 195 N.W. 740, 741 (Iowa 1923) (rejecting challenge to jury instruction that failed to include ownership as an element of a burglary offense where "[t]he indictment alleged that the store building broken and entered was 'then and there the property of George H. Wheeler,' " and the indictment "was read into the court's instructions"); *see also State v. Lawson*, 195 N.W. 366, 367 (Iowa 1923) ("The indictment was set out in the instructions. We think there could be no misunderstanding on the part of the jury that the defendants were on trial for the crime of larceny in a building in the nighttime. It was not necessary to inform

the jury what is meant by the phrase 'in a building in the nighttime.' It was not necessary for the court to give definition or explanation to the jury of terms employed in an indictment which are stated in ordinary language and in such a manner as to enable a person of ordinary understanding to know what is charged."); *cf. State v. Rullestad*, 143 N.W.2d 278, 280 (Iowa 1966) ("It is defendant's complaint that paragraph four of Instruction No. 5 [('That the act of the defendant as charged was the proximate cause of said injury and death.')] does not clearly refer to the act of defendant *of operating the motor vehicle while intoxicated*. On the face of it the complaint is hypercritical. No one other than a defense lawyer could read Instruction No. 5 and the [trial] information as stated in Instruction No. 1 and conclude the act of the defendant as used in paragraph four did not refer to operating a motor vehicle while intoxicated. That is what the information and instruction are about." (emphasis added)). The instructions did not omit the causal link required between Thompson's acts of deception and his obtaining the transfers of cash.

This case is not like the missing causation instruction in *State v. Schuler*, 774 N.W.2d 294. There, the defendant was one of several people who beat the victim. *Id.* at 295. The marshaling instruction required the jury to find that Schuler "punched, kicked, and/or grabbed" the victim, and that the victim "sustained a serious injury," but the jury was not instructed that Schuler—as opposed to one of the others—actually caused the victim's serious injuries. *Id.* at 298. So, the jury could have convicted Schuler by finding that he punched or kicked the victim even if those blows were not what caused the victim's serious injuries. *Id.* at 299–300.

There is no room for such confusion in the instructions here. The jury was instructed that the State must prove the following elements of theft:

1. . . . [T]he defendant did obtain the transfer of possession, control, or ownership of the property of Mary Wahl.

2. The defendant knowingly acted with deception.

Reading the instructions as a whole, particularly coupled with the trial information that was read to the jury and identified the crime as "obtaining a transfer of possession, control, or ownership of the property another *by deception*" (emphasis added), the jury was accurately instructed about the causal connection required between the two elements of theft. Any technical deficiency of not repeating "by deception" in the first element of each marshaling instruction might have made the instructions less than perfect, but it did not make them legally erroneous. I therefore agree with the majority that Thompson's conviction should be affirmed.

II.

The majority (needlessly) goes on to address Thompson's argument that harmless error should never be applied to jury instructions that omit an element of an offense, asking us to adopt Justice Scalia's position in his *Neder v. United States* partial dissent. *See* 527 U.S. 1, 30 (1999) (Scalia, J., concurring in part and dissenting in part) ("I believe that depriving a criminal defendant of the right to have the jury determine his guilt of the crime charged—which necessarily means his commission of *every element* of the crime charged—can never be harmless.").

The majority's analysis reveals that it reads "harmless" to really mean "uncontested," as the majority states in its conclusion: "In sum, the marshaling instruction was technically defective on a point that was not contested at trial." That position is consistent with the cases the majority relies upon where we discussed harmless error with respect to an uncontested, but purportedly

missing, element of an offense. *See, e.g.*, *State v. Seiler*, 342 N.W.2d 264, 267 (Iowa 1983) (en banc) (explaining that the contested issue at trial "was whether [the] defendant was the person who had committed" the murder and distinguishing *State v. Cuevas*, 282 N.W.2d 74 (Iowa 1979), on the basis that "[w]hile the firing of a single bullet does not inescapably lead to the conclusion that the perpetrator intended the victim's death," which required reversal in *Cuevas*, "the presence of multiple lacerations and two massive, skull-penetrating, meat cleaver wounds does inescapably lead to the conclusion that the burglary of the victim's tavern involved the intentional infliction of violence"); *State v. Shilinsky*, 81 N.W.2d 444, 448 (Iowa 1957) ("There was no dispute as to the time of the offense, if one was committed. The testimony is that it was about 4:50 to 5:00 p.m. The time was never a controverted issue, and we find no prejudice arose from the failure to state it in the governing instruction. The offense of larceny in the daytime was properly defined in Instruction No. 3; and under familiar rules the instructions are to be considered as a whole."); *State v. Chumley*, 294 N.W. 764, 768 (Iowa 1940) (rejecting defendant's challenge to the wording of an instruction where "there was in fact no dispute about the automobile having been in fact stolen from Allen Wichman"); *Fortune*, 195 N.W. at 741 ("The indictment was read into the court's instructions, and it is the accepted rule that it is not necessary to specifically instruct on matters admitted or established beyond dispute. . . . There can be no question that the jury understood that before a conviction was justified it must find the fact of ownership as alleged in the indictment."); *State v. Shank*, 44 N.W. 241, 242 (Iowa 1890) (rejecting challenge to instruction that did not expressly state that intoxicating liquors had to be found in the location described where that fact was "not questioned" by the defendant, who testified to keeping the liquor in the

location, and "the error was cured by other parts of the charge"); *State v. Goode*, 27 N.W. 772, 773 (Iowa 1886) (rejecting challenge to jury instructions for failing to instruct "that the money came into the defendant's hands by virtue of his employment" where "it does not appear that we have all the instructions before us" and the defendant's own testimony established that fact); *State v. Guisenhause*, 20 Iowa 227, 230–31 (1866) (holding that failing to instruct the jury that the defendant's keeping of liquor was "in violation of the provisions of this act" was not erroneous where there was no basis to instruct that the defendants were importers maintaining the liquor in its original package or that it was being sold for medicinal purposes).

I can get on board with that limited proposition: missing but *uncontested* elements that are supported by overwhelming evidence do not entitle a defendant to a new trial. *See, e.g.*, *Neder*, 527 U.S. at 17 ("In this situation, where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."). But whether appellate judges should be allowed to review the trial record to determine whether an uninstructed—*and contested*—element is supported by overwhelming evidence beyond a reasonable doubt, *see, e.g.*, *Jordan v. State*, 420 P.3d 1143, 1155–56 (Alaska 2018) ("We decide that the failure to instruct the jury on an essential *and contested* element of a crime is structural error; we thus reject *Neder*. We find the *Neder* dissent compelling." (emphasis added)), is an open question under our jurisprudence. The majority has not cited a case to the contrary.

And it is unclear what a harmless-error analysis would look like in the context of a contested element of an offense that was missing from the jury

instructions. As a general matter, when we apply a harmless-error analysis to a constitutional trial error, we review the evidence to determine whether the error was harmless beyond a reasonable doubt. In essence, appellate judges reweigh the strength of the evidence without the constitutionally offending evidence or with the constitutionally missing evidence. *See, e.g.*, *State v. White*, 9 N.W.3d 1, 14–15 (Iowa 2024) (explaining that harmless-error analysis applied to the violation of the defendant's right to confront witnesses where minors were allowed to testify outside the defendant's presence and required the court "to evaluate the evidence, other than the [erroneously admitted testimony], and . . . determine whether it was so overwhelming that we are abidingly convinced that their testimony did not contribute to the jury's finding of guilt" (citation modified)); *State v. Gibbs*, 941 N.W.2d 888, 900 (Iowa 2020) ("[E]ven though instructing the jury that a homicide defendant is required to notify a law enforcement agency of his or her use of deadly force violates the defendant's Fifth Amendment rights, here any error was harmless beyond a reasonable doubt because the evidence of guilt was so strong and that of justification was so weak."); *State v. Walls*, 761 N.W.2d 683, 686–87 (Iowa 2009) (considering whether the erroneous admission of evidence that violates a criminal defendant's rights under the Due Process Clause was harmless by asking "whether the force of the evidence is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same without the erroneously admitted evidence" (quoting *State v. Peterson*, 663 N.W.2d 417, 431 (Iowa 2003))). How that plays out in the context of a missing *and contested* element of the offense is not before us. So, we should not foreclose the possibility that an automatic reversal may be required when we are faced with such a case.

With that clarification, I join the court's judgment.

McDermott, J., joins this concurrence in the judgment.